MECHANICAL CONTRACTORS AS-
SOCIATION OF EASTERN PENN-
SYLVANIA, INC., Petitioner

v.

COMMONWEALTH of Pennsylvania,
DEPARTMENT OF EDUCATION,
Vicki L. Phillips, Secretary of Edu-
cation and The School District of
Philadelphia, Respondents.

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 2004.

Decided Oct. 20, 2004.

Reconsideration Denied Nov. 19, 2004.

**1146**

Stanley B. Edelstein, Philadelphia, for petitioner.

Miles H. Shore, Philadelphia, for respondent, School District of Philadelphia.

Robert M. Tomaine, Jr., Harrisburg, for respondent, Department of Education.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge.

OPINION BY Judge PELLEGRINI.

Before this Court is an application for summary relief and request for declaratory judgment filed by Mechanical Contractors of Eastern Pennsylvania, Inc. (MCA) seeking an order directing Secretary Vicki L. Phillips (Secretary) of the Department of Education (Department) to declare that neither Section 751(a) of the Public School Code of 1949 (School Code)[1] nor Section 1 of the Separations Act[2] is waivable under the Mandate Waiver Program of the Education Empowerment Act.[3]

In order to fully understand the facts of this case, an explanation of the legislative provisions regarding the award of separate contracts for public buildings is needed. The Separations Act, a general statute that covers the construction of all public buildings in the Commonwealth, requires that owners of public buildings take separate bids and award separate contracts for plumbing, heating, ventilation and electricity in the erection, construction and alteration of any public buildings over $4,000. 71 P.S. § 1618.[4] We have explained the purpose of the Separations Act as follows:

> The legislature clearly intended to keep the expenditure of public funds a process open and clear of any possible manipulations. To remove that process outside the hands of the appointed public officials charged with the duty of expending such funds, would be to infringe the rights of the public. It is clear to this Court that by implementing a procedure whereby the general contractor decides which subcontractor is to receive the work, denies the public their

---

1. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 7–751(a).

2. Act of May 1, 1913, P.L. 155, *as amended*, 71 P.S. § 1618.

3. Act of March 10, 1949, P.L. 30, *as amended*, added by Act of May 10, 2000, P.L. 44, *as amended*, 24 P.S. § 17–1701–B—17–1716–B.

4. Section 1 of the Separations Act states as follows:

> Hereafter in the preparation of specifications for the erection, construction, and alteration of any public building, when the entire cost of such work shall exceed four thousand dollars, it shall be the duty of the architect, engineer, or other person preparing such specifications, to prepare separate specifications for the plumbing, heating, ventilating, and electrical work; and it shall be the duty of the person or persons authorized to enter into contracts for the erection, construction, or alteration of such public buildings to receive separate bids upon each of the said branches of work, and to award the contract for the same to the lowest responsible bidder for each of said branches.

71 P.S. § 1618.

right to be assured that the work is awarded free of personal interest, bias, and prejudice. Furthermore, the Separations Act was intended to protect the materialmen who ... would become subject to the whim of a dishonest or incompetent general contractor; not only in the procedures the general contractor adopted for the award of work, but also for payment of work done. Regardless of whatever bond would be supplied by a general contractor under the proposed procedure, materialmen and subcontractors need the protection guaranteed by the involvement of responsible public officials.

*Mechanical Contractors Association of Eastern Pennsylvania, Inc. v. Southeastern Pennsylvania Transportation Authority,* 654 A.2d 119, 121 (Pa.Cmwlth.), *appeal discontinued,* 540 Pa. 625, 657 A.2d 494 (1995) (quoting *Metz v. Housing Authority of the City of Pittsburgh,* slip op. at 6, No. G.D. 88–01957 (Allegheny C.C.P.), *af-*

*firmed,* 121 Pa.Cmwlth. 210, 550 A.2d 599 (1988), *petition for allowance of appeal denied,* 525 Pa. 607, 575 A.2d 571 (1990)). On the other hand, by requiring public bodies to hire a four prime contractor for each of the four disciplines enumerated in the statute, the Separations Act precludes public bodies to bid on turnkey projects or design-build contracts, both of which likely would substantially decrease the costs to construct the project.

Aside from these general provisions requiring separate contracts, there are specific provisions requiring separate contracts inserted in various codes relating to classes of cities, counties and other public bodies.[5] One of those provisions—the one at issue here—is Section 751(a) of the School Code. It provides that all construction over $10,000 on any school building shall be done under "separate contracts" entered into by the school district with the lowest possible bidder for each contract. 24 P.S. § 7–751(a).[6] Much like Section 1

**5.** *See* Section 2317 of the Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 2317 (The County Code); Section 2517 of the Act of July 28, 1953, P.L. 723, *as amended,* 16 P.S. § 5517 (Second Class County Code); Section 1 of the Act of May 1, 1913, P.L. 155, *as amended,* 53 P.S. § 1003 (General Municipal Law); Article XIX, Section 1906 of the Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. § 36909 (Third Class City Code); Section 1405 of the Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 46405 (The Borough Code); Section 5 of the Act of May 27, 1953, P.L. 244, *as amended,* 53 P.S. § 53205 (Incorporated Towns); Article XVIII, Section 1805 of the Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. § 56805 (First Class Township Code); Section 3107 of the Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. § 68107 (Second Class Township Code).

**6.** Section 751(a) states as follows:

All construction, reconstruction, repairs, maintenance or work of any nature, including the introduction of plumbing, heating and ventilating, or lighting systems, upon any school building or upon any school property, or upon any building or portion of a building leased under the provisions of section 703.1, made by any school district, where the entire cost, value, or amount of such construction, reconstruction, repairs, maintenance or work, including labor and material, shall exceed ten thousand dollars ($10,000), **shall be done under separate contracts to be entered into by such school district with the lowest responsible bidder, upon proper terms, after due public notice has been given asking for competitive bids.** Whenever a board of school directors shall approve the use of a prefabricated unit, complete in itself, for a school building or other proper structure to be erected upon school property, the board of school directors may have prepared appropriate specifications detailing the size and material desired in a particular prefabricated unit, including all utilities such as plumbing, heating and ventilating, and electrical work, and may advertise for a single bid on all the work and award the contract therefore to the lowest responsible bidder: Provided, That if due to an emergency a school plant or any part thereof becomes unusable

of the Separations Act, Section 751(a) of the School Code requires multi-prime contracts instead of single-prime contracts for the construction of public school buildings.

The issue in this case is the effect of the Mandate Waiver Program of the Education Empowerment Act on these aforementioned provisions. That Program allows school districts to apply to the Department for a waiver of certain School Code requirements in order to "operate in a more effective, efficient or economical manner." 24 P.S. § .17–1714–B(a).[7] The Empowerment Act treats some provisions as non-waivable under the Mandate Waiver Program. See 24 P.S. § 17–1714–B(g).[8] Neither Section 751(a) nor the Separations Act is included in the list of non-waivable provisions. Id. However, Section 1715–B(3) of the Mandate Waiver Program, 24 P.S. § 17–1715–B(3), states that the Separations Act will not be superceded or abrogated by the Mandate Waiver Program.[9]

Turning to the facts before us, the School District of Philadelphia (District) submitted a Mandate Waiver Program Application to the Department seeking a waiver of the separate prime contract requirement of Section 751(a) of the School Code for the construction of new school buildings and renovations and additions to existing school buildings. By letter dated January 17, 2003, the Secretary granted the District's request to waive section 751(a) "to the extent this section requires the district to enter into a multi-prime contract for the pending construction of new facilities as well as the renovations of and additions to existing school facilities." The waiver stated that it was "conditioned upon our understanding that the waiver does not violate any other law, court order or provisions in the collective bargaining agreement." The District advertised for bids for construction work, but it did not seek the submission of separate bids for plumbing, heating, ventilating and electric work. The District ultimately entered into

---

competitive bids for repairs or replacement may be solicited from at least three responsible bidders, and upon the approval of any of these bids by the Secretary of Education, the board of school directors may proceed at once to make the necessary repairs or replacements in accordance with the terms of said approved bid or bids.
24 P.S. § 7–751(a). (Emphasis added.)

7. The mandate waiver provision states as follows:

(a) Except ·as otherwise provided in this section, the board of school directors may adopt a resolution to apply for a waiver to any provision of this act, the regulations of the State Board of Education or the standards of the secretary if the waiver will enable the school district to improve its instructional program or operate in a more effective, efficient or economical manner.
24 P.S. § 17–1714–B(a).

8. · Subsection (g) sets forth the non-waivable provisions:

(g) The following provisions of this act shall not be subject to waiver pursuant to this section: sections 108, 110, 111, 321, 322, 323, 324, 325, 326, 327, 431, 436, 437, ·440.1, 443, 510, 513, 518, 527, 688, 701.1, 708, 736, 737, 738, 739, 740, 741, 752, 753, 755, 771, 776, 777, 808, 809, 810, 1303(a), 1310, 1317, 1317.1, 1317.2, 1318, 1327, 1327.1, 1330, 1332, 1361, 1366, 1501, 1502, 1513, 1517, 1518, 1521, 1523, 1546 and 1547; provisions prohibiting discrimination; Articles VI, XI, XI–A, XII, XIII–A, XIV and XVII–A and this article.
24 P.S. § 17–1714–B(g).

9. In particular, that section states as follows:
Nothing in this article shall be construed to supersede or abrogate the following:

* * *

(3) Section 1 of the act of May 1, 1913 (P.L. 155, No. 104), entitled "An act regulating the letting of certain contracts for the erection, construction, and alteration of public buildings,"

* * *

a single contract that included plumbing, heating, ventilating and electric work.

■ MCA, a not-for-profit corporation organized and existing under the laws of the Commonwealth, whose members consist of plumbing, heating, ventilating and air conditioning contractors doing business in and around ten counties in Southeastern Pennsylvania, including Philadelphia County, and some of which perform, have performed and desire to perform plumbing, heating, ventilating and air conditioning work for the District, filed a petition for review in the nature of a declaratory judgment in January 2004[10] seeking an order directing the Secretary to rescind the waiver[11] issued by the Department to the District allowing them to award contracts for construction in contravention of the Separations Act. Both the Department and the District filed answers. The District also filed a new matter alleg-

ing, among other things, that MCA, as a non-profit trade association, lacked standing to file the petition for review. The District also filed a counter-request for declaratory judgment seeking a declaration that the Secretary was authorized to waive the multiple-prime contracting requirements of both the School Code and the Separations Act. On March 25, 2004, MCA filed the present application for summary relief.[12]

■ Initially, we must address the District's contention that MCA lacks standing. The District argues that MCA does not have a direct and substantial interest in the challenged action and does not show a close, causal connection between the challenged action and the asserted injury. In *National Solid Wastes Management Association v. Casey*, 135 Pa.Cmwlth. 134, 580 A.2d 893 (1990), we addressed what is

10. Section 7532 of the Declaratory Judgments Act, 42 Pa.C.S. § 7532, provides as follows:

Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

Section 7533 of the Declaratory Judgments Act further provides that:

Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.

42 Pa.C.S. *Id.* § 7533. When the question of a governmental body's authority is challenged, the Declaratory Judgments Act is

properly invoked. *Ruszin v. Department of Labor & Industry, Bureau of Workers' Compensation*, 675 A.2d 366 (Pa.Cmwlth.1996). Declaratory relief may be obtained to determine the validity of the acts of public officials. *Mid–Centre County Authority v. The Township of Boggs*, 34 Pa.Cmwlth. 494, 384 A.2d 1008 (1978).

11. The District contends that the letter granting the mandate waiver to the District was a quasi-judicial order, and because MCA did not challenge it within 30 days, MCA has waived its ability to pursue this action. The District also requested declaratory relief to determine the status of its waiver and its rights under the waiver. At oral argument, MCA amended the relief it sought to request only that the Secretary refrain from granting any waivers in the future, so whether the letter was a quasi-judicial order or an order that had to be appealed within 30 days need not be addressed.

12. Summary relief is appropriate when it is clear that there are no genuine issues of material facts to be tried and the moving party is entitled to relief as a matter of law. *Pennsylvania Bar Association v. Commonwealth*, 147 Pa.Cmwlth. 351, 607 A.2d 850 (1992).

necessary for an association to have standing:

> In determining whether the Association has standing to maintain this action, we are mindful that an association may have standing even in the absence of injury to itself. An association may have standing solely as the representative of its members and may initiate a cause of action if its members are suffering immediate or threatened injury as a result of the contested action. *Paratransit Association of Delaware Valley, Inc. v. Yerusalim,* 114 Pa.Commonwealth Ct. 279, 538 A.2d 651 (1988); *Concerned Taxpayers of Allegheny County v. Commonwealth,* 33 Pa.Commonwealth Ct. 518, 382 A.2d 490 (1978). Accordingly, in order for an association to have standing, it must allege that its members, or at least one of its members, has or will suffer a "direct, immediate and substantial injury" to their interest as a consequence of the challenged action. *In Re Family Style Restaurant, Inc.,* 503 Pa. 109, 468 A.2d 1088 (1983); *Sierra Club, Pennsylvania Chapter v. Hartman,* 130 Pa.Commonwealth Ct. 100, 567 A.2d 339 (1989); *Citizens for State Hospital v. Commonwealth,* 123 Pa.Commonwealth Ct. 150, 553 A.2d 496 (1989); *Concerned Taxpayers, supra.*

*Id.* at 899. In this matter, MCA's members—all plumbing, heating, and ventilating contractors—have a direct and substantial interest as to whether the Separations Act applies to public school construction or not because they will be deprived of the right to bid on separate contracts (as required by the Separations Act) to do work for the District as a direct result of the Department's choice to grant waivers of the Separations Act. This is sufficient to confer standing upon MCA as representative because any one of its members is immediately threatened by the Department's actions to award single-prime contracts allegedly in contravention of the Separations Act.

■ Turning now to the cross motions for summary relief and declaratory judgment, the sole issue is whether the separate contracts provision of the Separations Act, a general statute, still applies, even though the Secretary was not precluded from waiving the separate contracts requirement under the specific provision contained in Section 751(a) of the School Code. When construing this interplay between general provisions and specific provisions in special statutes, Section 1933 of the Statutory Construction Act provides guidance:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S. § 1933.

Because the only differences between the Separations Act and the School Code are (1) the dollar amount for contracts ($10,000 in Section 751(a); $4,000 in the Separations Act), and (2) emergency situations contemplated in Section 751 requiring a variation in bidding requirements, which is not included in the Separations Act, the School Code would prevail over the Separations Act only in those inconsistent respects. In all other respects, the two acts are consistent because both fundamentally require separate contracts for construction of public buildings (in the

case of Section 751, for construction of public school buildings, which is, itself, a public building). Because Section 751(a) of the School Code prevails over the Separations Act to the extent the latter is inconsistent, for the Secretary to allow waivers, the separate contracts requirement of the Separations Act must have been rendered inconsistent, repealed or rendered inapplicable by the provisions of the Empowerment Act.

The Statutory Construction Act not only provides that general acts survive to the extent they are not inconsistent with special acts dealing with the same subject matter, but the Empowerment Act indicates that the General Assembly did not intend to subject any general law such as the Separations Act to a waiver. Section 1714–B(i) of the Empowerment Act provides as follows:

> The board of directors [of a school district] *may not waive any* Federal law or *State law applicable to a public school* that is not within the provisions of this act [School Code].

24 P.S. § 17–1714–B(i). (Emphasis added.) Because the Separations Act is a state law applicable to all public buildings, including public school buildings, a waiver cannot be sought or granted unless there is another provision that repeals the Separations Act or renders it inconsistent with the School Code.

The best argument in favor of permitting a waiver of the Separations Act is that the Mandate Waiver Program implicitly amends Section 751(a) of the School Code by allowing a waiver of that provision so as to make the School Code inconsistent with and thereby prevailing over the Separations Act. While that position would have a great deal of merit standing alone, Section 1715–B(3) of the Empowerment Act specifically provides that nothing in that Act (which includes the Mandate Waiver Program) "shall be construed to supersede or abrogate" the Separations Act. 24 P.S. § 17–1715–B(3). To "supersede," as that term is commonly thought of, is to set aside, to force out of use as inferior, or to displace in favor of another. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1179 (10th Ed.2001). To "abrogate" is slightly different; it means to abolish, *id.* at 4, or to annul, cancel, revoke, repeal, or destroy. *See* BLACK'S LAW DICTIONARY WITH PRONUNCIATIONS 8 (6th Ed.1991). Judging by this statutory language that specifically admonishes against superseding or waiving the Separations Act, nothing indicates that the Empowerment Act intended to amend Section 751(a) so as to make it inconsistent with and prevail over the Separations Act.

■ Aside from the fact that Section 751(a) of the School Code and the Separations Act are not inconsistent with each other, nothing in the Empowerment Act indicates the intent of the General Assembly to repeal the Separations Act.[13] As to express repeal, Section 1715–B(3) states that nothing in the Empowerment Act shall be construed to "abrogate" the Separations Act. Because abrogate is synonymous with repeal, the School Code or any part thereof cannot, by its very terms, expressly repeal the Separations Act when the Empowerment Act states the opposite. Second, in Section 2701–2701, 24 P.S. § 27–2701, the School Code expressly repealed certain statutes, and the Separations Act was not and is not one of those

---

**13.** A statute may be expressly or impliedly repealed. *Department of Education v. First School,* 471 Pa. 471, 370 A.2d 702 (1977); 1 Pa.C.S. § 1971. Implied repeals are questions of legislative intent, but they are highly disfavored, so the legislative intent must be clear. *Cedarbrook Realty, Inc. v. Nahill,* 35 Pa.Cmwlth. 352, 387 A.2d 127 (1978), *affirmed,* 484 Pa. 441, 399 A.2d 374 (1979).

statutes.[14] Finally, although the School Code contains a general repeal provision,[15] that provision only works to repeal the Separations Act if it is inconsistent with the School Code. As stated above, the only inconsistencies between the Separations Act and the School Code are the dollar amount and the emergency provision, not the requirement for separate contracts.

■ With respect to implied repeal, Section 1971(a) of the Statutory Construction Act, 1 Pa.C.S. § 1971(a), provides as follows:

> (a) Whenever a statute purports to be a revision of all statutes upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former statute and is intended as a substitute for such former statute, such statute shall be construed to supply and therefore to repeal all former statutes upon the same subject.

1 Pa.C.S. § 1971. In order for this Court to find an implied repeal, there must be a showing that the General Assembly intended to create a comprehensive statute covering all matters relating to public school construction in the School Code. Aside from the fact that the Empowerment Act, itself an amendment to the School Code, maintained the application of the Separations Act in Section 1715–B(3), we question whether the School Code is the "be all and end all" of all matters public-school related. If that were so, then no general law would apply to anything relating to public schools. That is not the case. As our Supreme Court commented years ago in *Loomis v. Board of Education of School District of Philadelphia,* 376 Pa. 428, 103 A.2d 769 (1954):

> The Public School Code is a codification of laws pertaining to the public schools. It cannot be seriously contended that every matter pertaining directly or indirectly to the administration of the public schools has been embraced therein. To so hold would have destructive effect upon many general laws, the import and effective scope of which embrace larger fields than that of a school district or municipality or other political subdivision of the State. Such is the Act of 1935. It applies as a matter of public policy to all public employes. The Act of 1935 is neither specifically nor by implication repealed by the 1949 School Code, and the powers under the latter Act relied upon by the defendant must be exercised in conformity with the provisions of the former.

*Id.* at 437, 103 A.2d at 773.

Moreover, the legislative history of the School Code does not indicate an intent on the part of the General Assembly to create a comprehensive statute covering all matters relating to public school construction.

---

14. We also note that the historical notes state that the Separations Act is repealed insofar as it relates to boroughs, townships, townships of the second class, counties, except as to first class counties, and third class cities. *See* 71 P.S. § 1618 (Historical and Statutory Notes). When the multi-prime requirement of the Separations Act was expressly repealed by the General Assembly as it related to various classes of cities, townships and counties, there was no mention that the Separations Act was repealed with respect to school districts or public school buildings. Clearly, if the General Assembly intended to repeal the Separations Act with respect to public school buildings, it had the opportunity to do so.

15. That section repeals "[a]ll other acts and parts of acts inconsistent [with the Public School Code]." *See* 24 P.S. § 27–2702. We note that one commentator regards general repealing clauses as a "nullity" because they generally fail to identify or designate any act to be repealed, which cuts against the general proposition that repeals must be either express or implied. 2 SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 23:8, at 454–57 (6th Ed.2003).

While there have been many amendments to the School Code that changed contracting requirements from permitting single prime contracts to disallowing single prime contracts, to requiring multi-prime contracts and so on, none of that ebb and flow of legislation somehow negates the Separations Act. To the contrary, the most recent amendment to the School Code, the Empowerment Act, specifically saved the provisions requiring separate contracts for the construction of public school buildings under the Separations Act. 24 P.S. § 17–1715–B(3). If the legislative history shows anything, it shows that the General Assembly in its most recent amendment to the School Code did not intend to supplant the general law relating to separate contracts for construction of public buildings. Consequently, because of the strong presumption against implied repeals of statutes, it must be concluded that there is no implied repeal of the Separations Act by the School Code.[16]

Finally, we note that the purpose of the Empowerment Act is to allow school districts to "operate in a more effective, efficient or economical manner." 24 P.S. § 17–1714–B. Multi-prime contracts cost school districts more money compared to construction under single-prime contracts. Although we are aware of the potential savings school districts could realize if they employ single-prime contracts, and notwithstanding the fact that we support an economical approach to public school construction, we would be surpassing the bounds of our authority were we to disregard the plain language of the Empowerment Act which preserves the Separations Act.

For these reasons, Petitioner's application for summary relief is granted. The cross-application for summary relief filed by Respondents is denied.

### ORDER

AND NOW, this *20th* day of *October*, 2004, Petitioner's application for summary relief is granted. The cross-application for summary relief filed by Respondents is denied.

DISSENTING OPINION BY Judge COHN JUBELIRER.

Respectfully, I dissent. I do not agree that a statutorily authorized waiver, exercised on a case-by-case basis, "supersedes" or "abrogates" what is colloquially known as the Separations Act.[1] In order to give effect to all the statutory provisions at issue, I would allow the Secretary of Education (Secretary) to grant the disputed waivers.

Whether the Secretary can waive compliance with Section 1 of the Separations Act involves an examination of the interplay between four different statutory provisions. First, Section 1 of the Separations Act requires separate bids and contracts for "the erection, construction, or alteration of public buildings." The second statutory provision is Section 751 of the Public School Code of 1949 (School Code),[2] which requires separate contracts for "[a]ll construction, reconstruction, re-

---

16. We also note that a general repealing clause is not typically considered an implied repeal because it does not declare what the inconsistency is, but rather, it simply limits any implied repeal to only those acts that are inconsistent. Consequently, a general repealing clause is, in many ways, an express limitation on the ability to find implied repeal. *See* SULLIVAN, *supra* note 14, § 23:8, at 455–57.

1. Act of May 1, 1913, P.L. 155, *as amended*, 71 P.S. § 1618.

2. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 7–751(a).

pairs, maintenance or work ... of any nature upon any school building." The Separations Act requirement of separate bids and contracts for public buildings is thus incorporated, in substance, into Section 751 of the School Code, which mandates separate bids and contracts for school buildings, a type of public building.

The General Assembly recently enacted an amendment to the School Code known as the Education Empowerment Act.[3] Section 1714–B of the Education Empowerment Act, the third relevant statute statutory provision, authorizes the Secretary to issue waivers "to any provision of [the School Code]." 24 P.S. § 17–1714(B)(a). This Section also contains a very specific list of School Code provisions that absolutely cannot be waived. Importantly, the separations requirement in Section 751 of the School Code is **not** on that list. Thus, under Section 1714–B of the Education Empowerment Act, the Secretary is authorized to waive the separations requirement in the School Code, and the requirements of the Separations Act, to the extent those requirements are incorporated by inference into Section 751 of the School Code.

Complicating the analysis is Section 1715–B of the Education Empowerment Act, the fourth relevant statutory provision. 24 P.S. § 17–1715(B). Section 1715–B, in pertinent part, states:

Nothing in this article shall be construed to **supersede** or **abrogate** the following:

. . . .

(3) **Section 1 of the act of May 1, 1913 (P.L. 155, No. 104), entitled "An act regulating the letting of certain contracts for the erection, construction, and alteration of public buildings [*i.e.*, the Separations Act],"** the act of August 15, 1961 (P.L. 987, No. 442), known as the "Pennsylvania Prevailing Wage Act," and the act of March 3, 1978 (P.L. 6, No. 3), known as the "Steel Products Procurement Act."

(Emphasis added.)

The majority defines "supersede" as "to set aside, to force out of use as inferior, or to displace in favor of another," and defines "abrogate" to mean "abolish ... annul, cancel, revoke, repeal or destroy." (Op., p. 1151). While I do not disagree with these definitions, I do, respectfully, disagree that the Secretary's waiver falls within these definitions. ·

The Secretary's authorization to grant a waiver on a case-by-case basis does not "supersede" or "abrogate" the Separations Act, as those terms are defined, because even when a waiver is granted, *the Separations Act, itself, remains viable.* The Secretary, in accordance with Section 1714–B of the Empowerment Act, is permitted to issue a waiver only if doing so "will enable the school district to improve its instructional program or operate in a more effective, efficient or economical manner." There may well be circumstances where the Secretary, in his or her discretion, concludes that a waiver is inappropriate. In such a case, clearly, the Separations Act requirements *would* apply as they would in all situations where no waiver is even sought. Therefore, in my view, the Secretary's action in issuing case-by-case waivers does not supersede (*i.e.,* set aside, force out of use, displace) or abrogate (*i.e.,* annul, cancel, revoke, repeal or destroy) the Separations Act.

This Court is mandated to construe statutory law, if possible, to give effect to all provisions of a statute. *See Black v. Billy Penn Corp.,* 72 Pa.Cmwlth. 628, 457 A.2d 192, 193 (1983); *see also* Section 1922(2) of

---

**3.** Act of May 10, 2000, P.L. 44, *as amended,* 24 P.S. §§ 17–1701–B—17–1716–B.

the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(2). My interpretation of the applicable law does so. In addition, my interpretation allows for an effectuation of the stated purpose of the Education Empowerment Act, which is "[to] enable the school district to improve its instructional program or operate in a more effective, efficient or economical manner." 24 P.S. § 17–1714–B(a).

Accordingly, because I believe that Section 1715–B of the Empowerment Act allows the Secretary to issue, on a case-by-case basis, waivers of Separations Act requirements, I would deny Petitioner's application for summary relief and grant Respondents' cross-application for summary relief.

Judge LEADBETTER did not participate in the decision in this case.