934 A.2d 1262

MECHANICAL CONTRACTORS ASSOCIATION
OF EASTERN PENNSYLVANIA, INC.

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF
EDUCATION, Vicki L. Phillips, Secretary of Education
and the School District of Philadelphia

Appeal of School District of Philadelphia.

Mechanical Contractors Association of Eastern
Pennsylvania, Inc., Appellant.

v.

Commonwealth of Pennsylvania, Department of Education,
Vicki L. Phillips, Secretary of Education and the
School District of Philadelphia, Appellees.

General Building Contractors Association, Inc., Pennsylvania
School Boards Association, Pennsylvania Association of School
Business Officials, Pleasant Valley School District, Pennsbury
School District, General Contractors Association of Pennsylva-
nia Master Builders Association of Western Pennsylvania,
Pennsylvania State Council of Carpenters and AIA Philadel-
phia, Appellees

v.

Commonwealth of Pennsylvania, Pennsylvania Department of
Education and Vicki L. Phillips, Secretary of Education,
in her Official Capacity, Appellants.

Mechanical Contractors Association
of Eastern Pennsylvania, Inc.

v.

Commonwealth of Pennsylvania, Department of Education,
Vicki L. Phillips, Secretary of Education and the
School District of Philadelphia

Cross–Appeal of Commonwealth of Pennsylvania,
Department of Education and Vicki L.
Phillips, Secretary of Education.

General Building Contractors Association, Inc., Pennsylvania
School Boards Association, Pennsylvania Association of School
Business Officials, Pleasant Valley School District, Pennsbury
School District, General Contractors Association of Pennsylva-

nia Master Builders Association of Western Pennsylvania, Pennsylvania State Council of Carpenters and AIA Philadelphia, Appellants

v.

Commonwealth of Pennsylvania, Pennsylvania Department of Education and Vicki L. Phillips, Secretary of Education, in her Official Capacity, Appellees.

Supreme Court of Pennsylvania.

Argued April 6, 2006.

Decided Nov. 21, 2007.

226 
 

Richard Howard Lowe, Dana Jeffrey Ash, Philadelphia, Thomas W. Jennings, Cherry Hill, NJ, Robert A. Prentice, Philadelphia, for Gen. Bldg. Contractors Ass'n, Inc.

Irwin William Aronson, Philadelphia, for PA State Bldg. and Construction Trades Council, et al.

Arthur Makadon, Geoffrey A. Kahn, Miles H. Shore, Diana Lynn Spagnuolo, Paul Lantieri, III, Philadelphia, for School Dist. of Philadelphia.

J. Bart DeLone, Robert M. Tomaine, Jr., Harrisburg, Lawrence White, for Com. of PA, Dept. of Educ.

J. Bart DeLone, Harrisburg, for the Com. of PA, et al.

J. Bart DeLone, Robert M. Tomaine, Jr., Harrisburg, for Vicki L. Phillips.

Elise Edwards Walthall, Stanley B. Edelstein, Philadelphia, for Mechanical Contractors Ass'n of Eastern PA, Inc.

Michael Ira Levin, Huntington Valley, Emily J. Leader, Harrisburg, for PA School Boards Ass'n.

Jeffrey T. Tucker, for Pennsbury School Dist.

Daniel M. Corveleyn, Stroudsburg, for Pleasant Valley School Dist.

William W. Warren, Jr., Harrisburg, for PA Ass'n of School Business Officials.

Thomas W. Jennings, Cherry Hill, NJ, for PA State Council of Carpenters.

Richard Howard Lowe, Dana Jeffrey Ash, Robert A. Prentice, Philadelphia, for Master Builders Ass'n of Western Pa.

Gunther Otto Carrle, King of Prussia, for AIA Philadelphia.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Chief Justice CAPPY.[1]

These consolidated direct appeals,[2] arise under the Mandate Waiver Program (or "Program"), 24 P.S. § 17–1714–B. This Court considers whether the Commonwealth Court correctly concluded that the Mandate Waiver Program does not allow waiver of the requirement found in the Section 751(a) of the Public School Code of 1949 ("School Code"), 24 P.S. § 1–101 *et seq.*, that separate contracts be used for the plumbing, heating ventilation and lighting work done on public school buildings. For the reasons that follow, we conclude that the Commonwealth Court erred, and that Section 751(a) is subject to waiver under the Program. Accordingly, the orders of the Commonwealth Court in the MCA Action and the GBCA Action are reversed in part and affirmed in part, and the MCA Action is remanded to the Commonwealth Court for further proceedings.

The following material facts are not in dispute. The Mandate Waiver Program is a section in the Educational Empowerment Act (or "Act"), 24 P.S. §§ 17–1701–B–1716–B, which was added to the School Code in May of 2000. P.L. 44, No. 16, § 8.1. Under the Program, a school board may apply to the Appellant Commonwealth of Pennsylvania, Department of Education (the "Department") for a waiver of any provision of the School Code, if it will enable the school district to improve its instructional program or operate in a more effective, efficient or economical manner. 24 P.S. § 17–1714–B(a). The Department may grant the waiver, provided that one of the exceptions to waiver set forth in the Program does not apply. *Id.*[3]

1. This matter was reassigned to this author.

2. For ease of discussion, we refer to the appeal docketed in this Court at Nos. 50, 52 and 54 EAP 2004 as the "MCA Appeal" and the proceeding commenced in the Commonwealth Court as the "MCA Action." We refer to the appeal docketed in this Court at Nos. 53 and 59 EAP 2004 as the "GBCA Appeal" and the proceeding commenced in the Commonwealth Court as the "GBCA Action."

3. The Mandate Waiver Program states in relevant part:

On January 3, 2003, Appellant The School District of Phila-
delphia (the "District") submitted a Mandate Waiver Program
Application to the Acting Secretary of the Department in
connection with certain construction and renovation school
building projects it planned to undertake. Specifically, the
District sought relief from Section 751(a) of the School Code,
which requires that separate contracts be entered for work
done on the plumbing, heating and ventilating or lighting
systems in school buildings. 24 P.S. § 7–751(a).[4] In the

> 17–1714–B. Mandate waiver program
> (a) Except as otherwise provided in this section, the board of school
> directors may adopt a resolution to apply for a waiver to any
> provision of this [School Code] ... if the waiver will enable the
> school district to improve its instructional program or operate in a
> more effective, efficient or economical manner.
> * * *
> (d) The department shall have sixty (60) days from the receipt of the
> application to approve, disapprove or request modifications to the
> application....

24 P.S. § 17–1714–B(a),(d).

One of the two exceptions to waiver that is set forth in the Mandate
Waiver Program and relevant in these appeals lists the School Code
provisions that are not subject to waiver. This provision states:

> (g) The following provisions of this [School Code] shall not be subject
> to waiver pursuant to this section: sections 108, 110, 111, 321, 322,
> 323, 324, 325, 326, 327, 431, 436, 437, 440.1, 443, 510, 513, 518,
> 527, 688, 701.1, 708, 736, 737, 738, 739, 740, 741, 752, 753, 755,
> 771, 776, 777, 778, 808, 809, 810, 1303(a), 1310, 1317, 1317.1,
> 1317.2, 1318, 1327, 1327.1, 1330, 1332, 1361, 1366, 1501, 1502,
> 1513, 1517, 1518, 1521, 1523, 1546 and 1547; provisions prohibiting
> discrimination; Articles VI, XI, XI–A, XII, XIII–A, XIV and XVII–A
> and this article.
> * * *

24 P.S. § 17–1714–B(g) (footnotes omitted). The other exception that
is presently relevant states that "[t]he board of directors may not waive
any Federal law or State law applicable to a public school that is not
within the provisions of this [School Code]." 24 P.S. § 17–1714–B(i).

4. Section 751(a) states in relevant part:

> § 7–751. Work to be done under contract let on bids; exception
> (a) *All construction, reconstruction, repairs, maintenance or work of
> any nature, including the introduction of plumbing, heating and venti-
> lating, or lighting systems, upon any school building* or upon any
> school property, or upon any building or portion of a building leased
> under the provisions of section 703.1, made by any school district,
> where the entire cost, value, or amount of such construction, recon-
> struction, repairs, maintenance or work, including labor and materi-

materials submitted to the Department, the District indicated that a waiver of the multi-prime approach to construction would save the District significant time and enable the District to complete the projects with an estimated savings of $28.3 million dollars. After reviewing the Application, the Department advised the District in a letter dated January 17, 2003 that the Department had concluded that the District would operate more efficiently and economically if the requested waiver were approved. Accordingly, the Department approved the District's Application and granted it a waiver (the "Waiver") of Section 751(a) of the School Code for the construction or renovation projects specified in the Application. In November of 2003, the District advertised for bids on the projects. In its solicitation, the District did not seek separate bids for the plumbing, heating, ventilation, and lighting work needed, and sought instead, single bids that included all four work disciplines. Ultimately, the District entered into a single-prime contract for the work.

On January 9, 2004, Appellee Mechanical Contractors Association of Eastern Pennsylvania ("MCA"), a nonprofit corporation whose members are plumbing, heating, ventilating and air conditioning contractors doing business in Southeastern Pennsylvania, filed a Petition for Review in the Nature of an Action for Declaratory Relief in the Commonwealth Court against the Department, Appellant Vicki L. Phillips, the Secretary of Education (the "Secretary") and the District. The Petition for Review alleged, *inter alia*, that the Waiver was invalid under the Educational Empowerment Act and Section 1 of the Separations Act, which contains a separate contracts mandate for the plumbing, heating, ventilating and electrical work done on public buildings.[5] The Petition for Review requested a

al, shall exceed ten thousand dollars ($10,000), *shall be done under separate contracts* to be entered into by such school district with the lowest responsible bidder. . . .
24 P.S. § 7–751(a) (emphasis added). When separate contracts are entered, the contracts are sometimes referred to as multi-prime contracts. When separate contracts are not entered, the contract entered is sometimes referred to as a single-prime contract.

5. The Separations Act states in Section 1:

declaration that the multi-prime contracting requirements of the Separation Act were not waived for the District and an order directing the Secretary to rescind the Waiver.

The Department, Secretary and the District filed respective answers to MCA's Petition. The District also brought two counterclaims for declaratory judgment against MCA. In its counterclaims, the District sought a declaration from the Commonwealth Court that the Waiver is valid and that the Acting Secretary was authorized under the Mandate Waiver Program to waive the multi-prime contracting requirement in Section 751(a) of the School Code because it will enable the District to operate in a more efficient, economical manner. In the alternative, the District requested that the court hold a hearing and grant it a waiver under the Program, even if the court concluded that the Waiver was invalid or unauthorized.

On March 25, 2004, MCA filed an application for summary relief. On May 17, 2004, the District responded with an answer opposing MCA's application for summary relief and a cross-application for summary relief on its counterclaims.

§ 1618. Separate specifications for plumbing, heating, ventilating and electrical work; separate bids and contracts
Hereafter in the preparation of specifications for the erection, construction, and alteration of any public building, when the entire cost of such work shall exceed four thousand dollars, it shall be the duty of the architect, engineer, or other person preparing such specifications, to prepare separate specifications for the plumbing, heating, ventilating, and electrical work; and it shall be the duty of the person or persons authorized to enter into contracts for the erection, construction, or alteration of such public buildings to receive separate bids upon each of the said branches of work, and to award the contract for the same to the lowest responsible bidder for each of said branches.
71 P.S. § 1618. We observe that the Separations Act and Section 751(a) differ in the separate contracts mandates they respectively set forth. While the Separations Act requires a separate contract for "electrical work," Section 751(a) requires separate bids for "lighting systems." 71 P.S. § 1618; 24 P.S. § 7–751(a). None of the parties in either the MCA Appeal or the GBCA Appeal have raised this distinction. Therefore, for purposes of these appeals, we treat Section 751(a) of the Code and the Separations Act as identical in this regard.
We also note that although their respective monetary triggers differ, both the Separations Act and Section 751(a) set forth the same separate contracts requirement when the cost of the work exceeds $10,000. *Id.*

The Commonwealth Court *en banc* decided the cross applications for summary relief in a published opinion and order. *Mechanical Contractors Association of Eastern Pennsylvania, Inc. v. Commonwealth, Dept. of Education,* 860 A.2d 1145 (Pa.Cmwlth.2004). For the Commonwealth Court, the issue as to whether the Mandate Waiver Program allowed the waiver of Section 751(a) of the School Code called for an analysis of the relationship between the Separations Act, a general statute that applies to all public building construction, and Section 751(a), the more specific statute that applies only to public school building construction. *Id.* at 1150. In this regard, the court characterized the question it was to answer as whether the separate contracts mandate in the Separations Act continued to apply to the District, even though the Secretary was not precluded from waiving the separate contracts mandate in Section 751(a). *Id.* The court reviewed those sections of the Statutory Construction Act that cover inconsistent statutes or the repeal or amendment of one statute by another, *see* 1 Pa.C.S. §§ 1993, 1971, and concluded that the Separations Act prevailed and that the requirement for separate contracts could not be waived. *Mechanical Contractors,* 860 A.2d at 1150–53. Two statutory provisions were critical to the court's conclusion. The first provision was one of the exceptions to waiver in the Program, 24 P.S. § 17–1714–B(i), which provides that a school district may not waive any federal or state law that applies to a public school building and is not included within the School Code's provisions. *See supra* n. 3. According to the court, 24 P.S. § 17–1714–B(i) showed that the General Assembly intended to preclude the waiver of mandates in any state law of general application, like the Separations Act. *Id.* at 1151. The second provision was 24 P.S. § 17–1715–B(3), a section in the Educational Empowerment Act that instructs that its provisions may not be construed "to supersede or abrogate" Section 751(a) or the Separations Act.[6] According to the court, 24 P.S. § 17–1715–B(3)

---

6. The Education Empowerment Act states in relevant part:
§ 17–1715–B. Applicability
Nothing in this article shall be construed to supersede or abrogate the following:

showed that the General Assembly did not intend for the separate contracts mandate in the Separations Act to be supplanted by the terms of the Mandate Waiver Program, even if single-prime contracts would be more economical for public school construction. *Id.* at 1152–53. Therefore, the Commonwealth Court granted the application for summary relief filed by MCA and denied the cross-application for summary relief filed by the District.[7][8]

Judge Cohn Jubelirer filed a dissenting opinion. Judge Cohn Jubelirer did not agree that a waiver of Section 751(a) of the School Code by the Department on a case-by-case basis under the Mandate Waiver Program would supersede or abrogate the Separations Act in violation of 24 P.S. § 17–1715–B(3) of the Educational Empowerment Act. Accordingly, Judge Cohn Jubelirer would have denied MCA's application for summary relief and would have granted the District's cross-application for summary relief. *Id.* at 1153–55.

\* \* \*

(2) Sections 751, 751.1, 755, 756 and 757 [of the School Code]....
(3) Section 1 of the [Separations Act] [the] act of May 1, 1913 (P.L. 155, No. 104), entitled "An act regulating the letting of certain contracts for the erection, construction, and alteration of public buildings [ ]"....
24 P.S. 17–1715–B(2)(3) (footnotes omitted).

**7.** The Commonwealth Court noted that during oral argument, MCA amended its requested relief from seeking a rescission of the Department's approval of the Waiver to seeking only that the Secretary refrain from granting any waivers of Section 751(a) of the School Code in the future. *See Mechanical Contractors,* 860 A.2d at 1149 n. 11.

**8.** In the Commonwealth Court, the District also raised that MCA lacked standing and that MCA's Petition for Review was untimely because the Department's waiver was a quasi-judicial order that had to be appealed within thirty days. On both issues, the Commonwealth Court concluded otherwise. The court held that MCA was aggrieved and with standing to file the Petition for Review. *Mechanical Contractors,* 860 A.2d at 1149–50. The court also held that because MCA had amended the relief it sought to enjoin only future waivers, it was irrelevant as to whether MCA appealed the specific order granting the Waiver to the District. *Id.* at n. 11. These issues were not raised in the MCA Appeal.

In addition, the District raised that the MCA Action was barred by the doctrine of laches. The Commonwealth Court, however, did not specifically address this claim. The District has preserved the claim by raising it in this Court. Therefore, the claim remains for resolution by the Commonwealth Court on remand of the MCA Action.

The Department, the Secretary, and the District filed timely appeals from the Commonwealth Court's order in this Court. MCA filed a timely cross-appeal in this Court limited to whether the Commonwealth Court's order should have directed the Secretary to rescind the Waiver granted to the District.

While the MCA Action was pending in the Commonwealth Court, the GBCA Action was commenced on April 6, 2006 by several trade and building associations doing business in and around the City of Philadelphia area, Designated Appellants General Business Contractors Associations, Inc., Pennsylvania School Boards Association; Pennsylvania Association of School Business Officials, Pleasant Valley School District, Pennsbury School District, General Contractors Association of Pennsylvania, Master Builders Association of Western Pennsylvania, Pennsylvania State Council of Carpenters, and AIA Philadelphia (collectively, "GBCA Appellants"). The GBCA Appellants filed a Petition for Review in the Nature of an Action for Declaratory Judgment against the Department and the Secretary, alleging that the Department had adopted a non-discretionary denial approach to any application made under the Mandate Waiver Program for a waiver of Section 751(a) of the School Code as a result of *Perkiomen Valley Plumbing & Heating, Inc. v. Commonwealth, Department of Education*, No. 455 MD 2001 (Pa.Cmwlth.Jan.27, 2003), an unpublished opinion of the Commonwealth Court *en banc*. In *Perkiomen*, the Commonwealth Court held that the Separations Act applied to public schools and that the Mandate Waiver Program did not permit waiver of the Separation Act's separate contracts mandate. The GBCA Appellants requested a declaration from the Commonwealth Court that the Separations Act did not apply to public school construction; that the Mandate Waiver Program authorizes the Department to grant waivers of Section 751(a) of the School Code; and that the Department must process and consider the merits of applications for such waivers and grant them consistent with its authorized discretion.

On May 26, 2004, the GBCA Appellants filed an application for summary relief and a request for hearing by the Court *En*

*Banc.* On October 20, 2004, the Commonwealth Court denied the application for summary relief, citing to its decision in the MCA Action. Judge Cohn Jubelirer dissented for the reasons expressed in her dissenting opinion in the MCA Action.

The GBCA Appellants filed a timely appeal from the Commonwealth Court's October 20, 2004 Order in this Court.

By stipulation of the parties, the MCA Appeal and the GBCA Appeal were consolidated. *See* Pa.R.A.P. 513. Presently, the District, the Department, the Secretary and the GBCA Appellants (collectively, the "Appellants") primarily argue that the Commonwealth Court's fundamental error was its conclusion that the Separations Act is applicable to public school construction contracts. They assert that over the years, the School Code has changed repeatedly; at some times, it has authorized separate contracts, and at other times, it has not. According to Appellants, this must mean that the Legislature intends for the School Code to govern the bidding and contracting requirements for public school construction exclusively. Thus, 24 P.S. § 17–1714B(g) of the Mandate Waiver Program is the only place to look for determining whether Section 751(a) is excepted from waivability. Since Section 751(a) is not listed in 24 P.S. § 17–1714B(g) as non-waivable, it is subject to waiver under 24 P.S. § 17–1714B(a). Further, as to § 17–1715–B(3) of the Education Empowerment Act, Appellants contend that that section merely insures that certain generally applicable laws are not superseded or abrogated outside the context of school construction.

MCA responds that the Commonwealth Court properly concluded that the Separations Act applies to public school construction contracting and that given the Educational Empowerment Act's clear instruction in 24 P.S. 17–1715(B)(g) that the Separations Act may not be superseded or abrogated, the Mandate Waiver Program does not authorize the Department to waive the separate contracts mandate. MCA further argues that if Section 751(a) were to be deemed waivable under the Program, the Separations Act would be violated.

■ The issue raised in these appeals—whether the Department may waive Section 751(a) of the School Code under the Mandate Waiver Program, and the parties' arguments on the issue—require this Court to construe and determine the interplay among three statutes, the Separations Act, the Educational Empowerment Act, and the Mandate Waiver Program. Therefore, the Statutory Construction Act of 1972 ("SCA") controls. 1 Pa.C.S. § 1501 *et seq.*[9] Under the SCA, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). When, however, the words of the statute are not explicit, the General Assembly's intent is to be ascertained by considering matters other than statutory language. 1 Pa.C.S. § 1921(c). These matters include the object to be attained by the statute, its contemporaneous legislative history, and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c)(4),(6), (7). "Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a). In construing a statute, a court may presume that the General Assembly intends the entire statute to be certain and effective, and intends to favor the public interest as against any private interest. 1 Pa.C.S. § 1922(1),(5). Moreover, the SCA sets forth rules for a court

9. This question is a pure question of law. This Court's standard of review is *de novo* and scope of review is plenary. See *Commonwealth v. Ostrosky*, 589 Pa. 437, 909 A.2d 1224 (2006).

Moreover, the test for the grant of summary relief is set forth in Pa.R.A.P. 1532(b), which states that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." The Note to Pa.R.A.P. 1532 advises that subdivision (b) authorizes immediate disposition of a petition for review, similar to the type of relief envisioned by the Pennsylvania Rules of Civil Procedure regarding judgment on the pleadings and preemptory and summary judgment.

to follow when provisions in or among statutes are in conflict. 1 Pa.C.S. §§ 1933–36.

■ Since Section 751(a) would be non-waivable without further analysis if this Court were to determine that the Section's waiver would violate the admonition in the Education Empowerment Act that "nothing in [this Act, which includes the Mandate Waiver Program], shall be construed to supersede or abrogate" either Section 751(a) or Section 1 Separations Act, we turn to that provision first. 24 P.S. § 17–1715–B(2),(3). We observe that under common and approved usage, "supersede" means to "set aside, cease to employ"; that "abrogate" means to "repeal, annul or abolish"; and that "waive" means "to refrain from insisting upon or using." *The* Oxford American Dictionary and Language Guide 1013, 3, 1138 (1999). Based on the plain meaning of these words, we find that the act of waiving a statutory mandate under the Mandate Waiver Program is simply not tantamount to the act of superseding or abrogating the mandate or the statute in which the mandate is found. The act of waiving a statutory mandate results in a temporary and limited suspension of the mandate's legal force and effect when specified conditions are met; otherwise, the mandate controls. The act of superseding or abrogating a statutory mandate or statute renders it devoid of any further legal significance and impact in all instances thereafter. Therefore, we do not conclude that Section 17–1715–B, is a direction from the General Assembly that the Mandate Waiver Program must be read as precluding the waiver of the School Code's separate contracts mandate in Section 751(a). 24 P.S. § 17–1715–B(2),(3). Rather, we conclude that Section 17–1715–B is a statement from the General Assembly meant to emphasize that there is indeed a difference between the waiver of a statutory mandate on the one hand and the abrogation or repeal of a statute on the other, and that even with the Mandate Waiver Program's enactment, Section 751(a) of the School Code and Section 1 of the Separations Act remain part of the statutory law of Pennsylvania. *Id.*

■ Next, we turn to whether the Separations Act applies in the context of public school building construction. The General Assembly's intent in this regard is ascertainable from the statute's words. 1 Pa.C.S. § 1921(b). That is, the words in the Separations Act are clear and explicit, stating that certain separate specifications and contracts are required for the construction of "any public building." 71 P.S. § 1618. A public school is "any public building." Thus, we conclude that the Separations Act applies to public school building construction contracts.[10]

With this conclusion in mind, we now determine whether the separate contracts mandate in Section 751(a) of the School Code is indeed waivable under the Mandate Waiver Program. Since subsection (a) of the Mandate Waiver Program states that "any provision" of the School Code may be waived, it is evident that Section 751(a) falls within the Program's general rule of waiver. 24 P.S. § 17–1714–B(a). It is also evident that one of the Program's exceptions to waiver, in which certain School Code provisions are designated as non-waivable does not apply, as Section 751(a) is not listed among them. 24 P.S. § 17–1714–B(g).

It is not evident, however, whether Section 751(a)'s separate contracts mandate falls within Section 17–1714–B(i), the Program's exception to waiver for a "State law applicable to a public school that is not within [the School Code's] provisions...." 24 P.S. § 17–1714–B(i). While it is clear that the separate contracts mandate, part of the Separations Act, is a state law, *see* 71 P.S. § 1618, and that the Separations Act is applicable to public school construction, *see supra* p. 235–37, 934 A.2d at 1269–70, it is not clear whether the Separations Act is within the School Code's provisions. This is because

---

**10.** We think it important to note how the argument made by Appellants in these appeals that the Separations Act does not apply to public school construction contracts misses the mark. Appellants confuse the question of whether a particular statute applies to a subject matter with the questions of whether that statute is in conflict with another statute that applies to the same subject matter; whether applicable statutes conflict; whether the conflict between applicable statutes is irreconcilable; and whether one applicable statute will be construed to prevail over the other applicable statute. *See* 1 Pa.C.S. §§ 1933–36.

the Separations Act's separate contracts mandate is incorporated into the School Code through Section 751(a)'s content, not by specific reference, and the General Assembly has not clarified whether this is sufficient to place the separate contracts mandate found in the Separations Act within the School Code provisions and therefore, beyond the Program's Section 17–1714–B(i) exception.[11] Accordingly, the factors the Statutory Construction Act lists as sources of legislative intent when legislative intent cannot be ascertained from the words of a statute are appropriately consulted for the answer. 1 Pa.C.S. § 1921(c).

Our consideration of these factors leads us to conclude that the separate contracts mandate is applicable state law within the provisions of the School Code, and thus, not excepted from waiver under 17–1714–B(i) of the Mandate Waiver Program. First, this construction of Section 17–1714–B(i) advances the object the Legislature sought to attain in the Program—"to allow school districts to operate in a more effective, efficient or economical manner." 24 P.S. § 17–1714–B(a). *See* 1 Pa.C.S. § 1921(c)(4). Second, it serves to narrow the exception's application and permit the waiver of mandates more often. *See* 1 Pa.C.S. § 1921(c)(5). Third, in allowing the waiver of a mandate that is not listed in the Program as a non-waivable School Code section, it gives effect to all of the Mandate Waiver Program's provisions. *See* 1 Pa.C.S. § 1921(1). Finally, it favors the public interest, by contributing to efficient and economical public school construction. *See* 1 Pa.C.S. § 1922(5). Therefore, we conclude that the separate contracts mandate in Section 751(a) of the Code does not fall

11. Referring specifically to the Commonwealth Court's opinion in the MCA appeal on this point, we note that in its analysis, the Commonwealth Court quoted the words of Section 17–1714–B(i)'s exception, and concluded that the exception set forth an absolute rule that no general law that applies to public schools, like the Separations Act, may be waived under the Program. *Mechanical Contractors*, 860 A.2d at 1151. The court's conclusion that the Program absolutely precluded the waiver of any state law of general application was premised on an erroneous reading of the exception. That is, the court disregarded the words "not within the provisions of [the Code]" that follow the words "[t]he board ... may not waive any ... State law applicable to a public school...." 24 P.S. § 17–1714–B(i).

into any of the Mandate Waiver Program's exceptions, and accordingly, may be waived under the Program's general rule. 24 P.S. § 17–1714–B(a),(g),(i).

■ Last, we address the contention made by MCA that a construction of the Mandate Waiver Program that allows a waiver of the separate contracts mandate in Section 751(a) of the Code is impermissible because it would violate the Separations Act.

MCA's contention raises whether the Mandate Waiver Program and the Separations Act are conflicting enactments, and if so, what construction they should be given. While the Program permits a waiver of the mandate, the Separations Act does not. 24 P.S. § 17–1714–B; 71 P.S. § 1618. In this regard, the statutes conflict. The Separations Act is a general statute, regulating the construction of all public buildings; the Mandate Waiver Program, found in the Code, is a specific statute, regulating the construction of public schools. In the SCA, the Legislature has provided a section, 1 Pa.C.S. § 1933, that governs the construction of general and specific statutes that conflict.

Section 1933 initially instructs that "[w]henever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect can be given to both." 1 Pa.C.S. § 1933. Section 1933 next instructs that "[i]f the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision prevail." *Id.*

Based on these principles from the SCA, we conclude that the Mandate Waiver Program and the Separations Act can be construed to give both effect. The exception in Section 17–1714–B in the Mandate Waiver Program is key. The exception reveals that the General Assembly recognized that there are state laws, like the Separations Act, that have been

enacted that apply to public schools and create mandates for school boards to follow. 24 P.S. § 17–1714–B(a). The exception also reveals that the General Assembly decided to allow the waiver of those state law mandates, as long as they have been, as here, incorporated into the School Code's provisions. *Id.* Like the Separation Act, the Mandate Waiver Program is an exercise by the General Assembly of legislative power. The Program reflects the General Assembly's own policy choice to refrain from insisting upon compliance with the Separations Act in all circumstances, so as further the goal of effective, efficient, and economical public school operation. *See* 24 P.S. § 17–1714–B(a).

For the foregoing reasons, we hold that Section 751(a) of the School Code is subject to waiver under the Mandate Waiver Program. 24 P.S. §§ 7–751(a); 17–1714–B.

In the MCA appeal:

(1) the order of the Commonwealth Court granting MCA's application for summary relief is reversed;

(2) that part of the order of the Commonwealth Court denying the District's application of summary relief as to whether the Separations Act applies to public school construction and major renovations is affirmed;

(3) the MCA Action is remanded to the Commonwealth Court for further proceedings consistent with this opinion on the counterclaims asserted by the District and for the disposition of unresolved issues; and

(4) the cross-appeal filed by MCA is dismissed as moot.

In the GBCA appeal:

(1) the order of the Commonwealth Court denying Designated Appellants' application for summary relief and request for declaratory judgment as to whether the Mandate Waiver Program authorizes waiver of the separate contracts mandate in Section 751(a) of the Code and whether the Department must process and consider the merits of all applications for such waivers consistent with its authorized discretion is reversed;

(2) that part of the order of the Commonwealth Court denying Designated Appellants' application for summary relief and request for declaratory judgment as to whether the Separations Act applies to public school construction is affirmed.

Former Justice NEWMAN did not participate in the decision of this case.

Justices CASTILLE, EAKIN, BAER and Justice BALDWIN join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR concurring.

While I agree with the result reached by the majority, I have several differences with its reasoning. For example, whereas the majority finds one potentially material aspect of the Mandate Waiver Program to be unambiguous by way of reference to a dictionary, *see* Majority Opinion at 235–37, 934 A.2d at 1269–70, I find the ambiguity that the majority ultimately recognizes to be more pervasive in the statute. Moreover, I consider the relevant policy considerations to be more greatly mixed than the majority portrays, *see id.* at 238, 934 A.2d at 1271.

Nevertheless, in the end analysis, had the General Assembly intended Section 751(a) to be non-waivable, it had the opportunity to clarify this design in the most clear and straightforward manner by simply adding Section 751(a) to the list of non-waivable provisions. Absent such direction, I believe that it is appropriate to defer to the administrative interpretation, unless and until there is further direction from the Legislature. To the extent, moreover, that the Separations Act might independently apply notwithstanding any valid waiver of Section 751(a), I would conclude that the latter provision effectively replaces the former one for purposes of public school properties, as any other interpretation would render Section 751(a) of little practical effect. *See generally Allegheny County Sportsmen's League v. Rendell,* 580 Pa. 149, 163–64, 860

A.2d 10, 19 (2004) (indicating that, for purposes of statutory construction, courts should avoid interpretations that render a statutory provision of no effect).