## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Wheels Mechanical Contracting and Supplier, Inc. | : : : | |
| v. | : : | No. 1803 C.D. 2016 |
| The West Jefferson Hills School District and Nello Construction and Laborers' District Council of Western Pennsylvania, and Plumbers Local Union No. 27 | : : : : : : : : | |
| Appeal of: West Jefferson Hills School District | : : : | |

| | | |
|---|---|---|
| Wheels Mechanical Contracting and Supplier, Inc. and Plumbers Local Union No. 27 | : : : : | |
| v. | : : | No. 1827 C.D. 2016 |
| The West Jefferson School District Nello Construction, and Laborers' District Council of Western Pennsylvania | : : : : : | |
| Appeal of: Laborers' District Council of Western Pennsylvania | : : : | |

| | | |
|---|---|---|
| Wheels Mechanical Contracting and Supplier, Inc. | : : : | |
| v. | : : : | No. 1828 C.D. 2016 Argued: February 6, 2017 |
| The West Jefferson Hills School District and Nello Construction | : : : | |
| v. | : : : | |
| Laborers' District Council of Western | : | |

Pennsylvania, and Plumbers Local        :
Union No. 27                            :
                                        :
Appeal of:  Nello Construction          :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                         FILED:  February 28, 2017


          In these consolidated appeals, the West Jefferson Hills School District (District), Nello Construction (Nello) and Laborers' District Council of Western Pennsylvania (Laborers) (collectively, Appellants), appeal from an order of the Court of Common Pleas of Allegheny County (trial court), which granted a preliminary injunction in favor of Wheels Mechanical Contracting and Supplier, Inc. (Wheels) and halted construction of a new high school.[1]  Significantly, the trial court determined that the installation of storm sewers, sanitary sewers and water service lines constituted "plumbing branch work," as opposed to "site work," that should have been included in the plumbing prime contract and that District violated Section 751 of the Public School Code of 1949 (School Code)[2] and Section 1 of the act commonly referred to as the Separations Act[3] by including this work in the general construction prime contract.  Appellants argue that the trial

---

[1] *See* Pa. R.A.P. 311(a)(4) (orders granting injunctions, though interlocutory, are appealable as of right).

[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §7-751.

[3] Act of May 1, 1913, P.L. 155, *as amended*, 71 P.S. §1618 (also classified as 53 P.S. §1003).

2

court erred or abused its discretion by granting the preliminary injunction where the relief sought by Wheels was barred by the doctrine of laches; Wheels did not meet the requisite elements for a preliminary injunction; and, the trial court lacked subject matter jurisdiction. In addition, Nello claims the trial court erred or abused its discretion by precluding it from presenting evidence on its cross-claim. Upon determining Wheels' action is barred by the doctrine of laches, we reverse the trial court's preliminary injunction order and remand for further proceedings.

## I. Background

The Project is a $100-million construction project to build the Thomas Jefferson High School (Project) in the Borough of West Jefferson Hills. The Project's location is a reclaimed strip mine, consisting of 160 acres.

In December 2015, the District solicited bids for electrical, plumbing, heating and ventilating, and general construction. Of relevance here, the specifications assigned all sanitary line, storm line, and water line installations inside the building and up to five feet outside of the building to the plumbing prime contractor. All site sanitary, site storm, and site waterline installation more than five feet from the building was assigned to the general prime contractor as "site utility" work because of the significant trenching and backfilling required. The District received bids and awarded contracts in January 2016. The District awarded the plumbing prime contract to Wheels and the general construction prime contract to Nello.

On June 1, 2016, Wheels filed a complaint in equity as well as a motion for a preliminary injunction against the District and Nello to stop certain work on the Project. Wheels asserted the District violated Section 751 of the

3

School Code and Section 1 of the Separations Act by failing to include in the plumbing prime contract *all* "plumbing branch work," namely, work in connection with the installation of sanitary sewer, storm sewer and water service lines (also referred to as the "disputed work"). Laborers intervened in support of the District and Nello, and Plumbers Union intervened in support of Wheels.

On October 26, 2016, after a three-day evidentiary hearing, the trial court entered an order granting injunctive relief. Although the term plumbing is not defined by the Separations Act or School Code, or by any case law interpreting those statutes, the trial court found that the installation of sanitary sewers, storm sewers and water service lines outside of a public building is "plumbing branch work" that must be included in the contract awarded to the plumbing prime contractor. In so finding, the trial court applied the definitions of plumbing work contained in Section 201 of the International Plumbing Code, 2009 (IPC) edition.[4] Trial Court Preliminary Injunction Order, 10/26/16, at 3, ¶3. The trial court further observed that the Allegheny County Plumbing Code (ACPC), which incorporated and adopted the IPC 2009, provides:

> No person, other than a licensed master plumber, a licensed journeyman plumber in the employ of a licensed master plumber, a registered plumbing apprentice in the employ of a licensed master plumber, or a bonafide owner presently occupying an existing single family building shall install, alter, or make connections with any sewer, water, drain, or any pipe connected therewith; or alter the location of any existing plumbing fixtures, water distribution piping system or sewer drainage system.

---

[4] The 2009 edition of the IPC is part of our Uniform Construction Code, 34 Pa. Code §403.1, and is available at http://www.achd.net/plumbing/pubs/pdf/plumbingcode15.pdf (last visited 2/10/17).

*Id*. (quoting Section 106.5.8 of the ACPC).[5] Thus, the trial court determined that the bid specifications and contracts awarded clearly violated Section 751 of the School Code, and Section 1 of the Separations Act because the plumbing prime contract did not include all plumbing work. On this basis, the trial court found Wheels established a clear right to relief.

In addition, the trial court found that Wheels satisfied the other criteria necessary for a preliminary injunction. Specifically, the trial court found that the violation of the School Code and Separations Act constituted irreparable harm *per se*, and that greater harm will result from denying the relief because the harm of the violation will continue unabated. Granting the relief will restore the status quo by reversing the violations of the School Code and the Separations Act and requiring future compliance with the law. The issuance of a stay will not harm public interest, which has a profound interest in having its elected bodies adhere to the law.

Further, the trial court rejected Appellants' laches argument. The trial court explained Wheels was under no duty to recognize the illegality of the bid and, at the time Wheels filed suit, "no actual work had commenced on the exterior plumbing work." Trial Court Preliminary Injunction Order at 5-6, ¶10.

Thus, the trial court granted Wheels' motion for a preliminary injunction and ordered:

> (a) The School District is enjoined from including in the scope of the prime general contractor's work, any plumbing work, including the installation of storm sewers, sanitary sewers and water service lines, and shall

---

[5] ACPC is available at https://law.resource.org/pub/us/code/ibr/icc.ipc.2009.pdf (last visited 2/10/17).

5

include such work in the scope of work of the prime plumbing contractor, in this matter, Wheels Mechanical;

(b) The School District is enjoined from permitting any continued work on the exterior plumbing, including the sanitary sewers, storm sewers and water lines by the general construction prime contractor, or its sub-contractor, Macson, as of the date of this Order;

(c) The School District shall direct its construction manager to issue a change order transferring to the scope of work of the prime plumbing contractor, Wheels Mechanical, all unfinished exterior plumbing work involved in the installation of the sanitary sewer, storm sewer and water lines and further directing that payment for such work shall be at the actual value of the work remaining, except to the extent that Wheels Mechanical is required by [sic] to employ plumbers to perform the plumbing work, in which case Wheels shall be reimbursed for labor costs in excess of the rate paid for laborers.

(d) The School District is enjoined from awarding any future construction contracts that do not comply with the provisions of the Separations Act or the School Code, in the future for awarding any contract that does not comply with the provisions of the Separations Act and of the end of §7-751 of the School Code; and

(e) Wheels Mechanical shall post a bond in the amount of $25,000.00.

Trial Court Preliminary Injunction Order at 6-7.

The District filed a motion to stay with the trial court, which the trial court denied. On October 27, 2016, the District filed a notice of appeal in this Court (at No. 1803 C.D. 2016), which triggered the operation of an automatic supersedeas pursuant to Rule 1736(b) of the Pennsylvania Rules of Appellate Procedure because the District is a political subdivision. Thereafter, both Nello

6

and Laborers filed separate appeals (at Nos. 1828 C.D. 2016 and 1827 C.D. 2016, respectively).

In response, Wheels filed an application to vacate the automatic supersedeas pursuant to Pa. R.A.P. 1732, which the trial court granted on November 7, 2016. The District then filed an emergency application to reinstate the supersedeas, which this Court, after argument, granted in part and denied in part upon determining the preliminary injunction order was overreaching, contrary to the School Code and Separations Act, and did not maintain the status quo. Specifically, we stayed application of subparts (a) and (c) of the trial court's preliminary injunction order, but upheld the preliminary injunction order in all other respects pending disposition of the merits of this appeal.

Thereafter, the appeals were consolidated.[6] The parties filed separate briefs.[7]

## II. Issues

On appeal,[8] Appellants argue that the trial court erred or abused its discretion in holding that the relief sought by Wheels was not barred by the

---

[6] Commonwealth Court Order, 12/9/16.

[7] Nello joins in the District's brief, but separately briefed the issue of whether the trial court abused its discretion by precluding Nello from presenting evidence in support of its crossclaim.

[8] Appellate review of a trial court's application or denial of the doctrine of laches is limited to whether the trial court's findings are supported by the evidence "or predicated upon erroneous inferences and deductions or errors of law." *See Hicks v. Saboe*, 555 A.2d 1241, 1244 (Pa. 1989) (quoting *Payne v. Kassab*, 361 A.2d 263, 267 (Pa. 1976)). In addition, our review of a preliminary injunction that is prohibitive or preventive in nature is "highly deferential." *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000 (Pa. 2003). "[W]e do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Id.* (quoting *Roberts v. Board of Directors of School District*, 341 A.2d 475, 478 (Pa. 1975)). However, a
**(Footnote continued on next page…)**

doctrine of laches. In addition, they claim the trial court erred by granting a preliminary injunction where Wheels did not establish the requisite elements. Namely, Appellants assert Wheels does not have a clear right to relief where neither the Separations Act nor the School Code defines plumbing work and it is industry custom and practice to include the installation of storm sewers, sanitary sewers and water service lines in the site work contract of the general contractor. The alleged violation of the School Code and Separations Act does not constitute irreparable harm as any injury suffered by Wheels may be compensated by monetary damages. Greater harm resulted from granting the injunction as it has stalled the Project, to the detriment of Appellants, innocent subcontractors, and the taxpaying public. The injunction is also not narrowly tailored to correct the alleged wrong, requires the School District to violate public bidding laws, and does not restore the status quo.

In addition, Laborers contends the trial court erred by failing to address whether the court lacked subject matter jurisdiction over the underlying claim because all parties in this lawsuit are bound by the jurisdictional dispute provisions of the Project Labor Agreement, which provide for binding arbitration if issues concerning work jurisdiction on the Project are not resolved. It further claims that the trial court erred by failing to address whether Wheels' requested relief was preempted by Sections 8(b)(4)(D) and 10(k) of the National Labor

---

**(continued…)**

mandatory injunction, which commands the performance of some positive act, is subject to much "greater scrutiny." *Mazzie v. Commonwealth*, 432 A.2d 985, 988 (Pa. 1981).

8

Relations Act (NLRA).[9]  Lastly, Nello claims the trial court abused its discretion by precluding it from presenting evidence in support of its cross-claim.

### III. Discussion
### A. Doctrine of Laches

First, Appellants assert that the trial court erred in determining that the doctrine of laches did not apply.  Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another.  Appellants maintain that Wheels knew or should have known that the disputed work was not included in the specifications when it bid on the Project seven months earlier.  The bid specifications were available to all bidders, including Wheels, for inspection and review.  The specifications assigned all sanitary line, storm line, and water line installations inside the building and up to five feet outside of the building to the plumbing prime contractor.  All site sanitary, site storm, and site waterline installation more than five feet from the building was assigned to the general prime contractor.  Wheels did not bid on the disputed work.  Wheels was well aware when it submitted its bid that the disputed work was part of the general construction contract and not part of the plumbing contract.  Yet, Wheels failed to exercise due diligence by waiting months after construction was underway to institute the action.  Wheels' delay has greatly prejudiced Appellants.

Appellants maintain that the trial court relied upon the false premise that no work had commenced on the disputed work prior to the lawsuit, which Wheels filed on June 1, 2016.  However, the testimony and payment applications entered into evidence clearly established that not only were materials purchased and delivered before June 1, 2016, but significant work had also begun on the site

---

[9] 29 U.S.C. §§158(b)(4)(D) and 160(k).

utilities. Appellants explain that, typically, pay applications lag behind the work performed by one or two months. By the time of the preliminary injunction hearing, approximately 70 percent of the site storm sewer was completed and 50 percent of the site sanitary sewer was completed. Wheels brought the lawsuit too late to return the parties to the status quo. As for Wheels' acceleration claims, evidence presented shows that, since the Project kick-off meeting in March 2016, the disputed work was tentatively scheduled to commence in June 2016 and July 2016, and that some of the disputed work needed to be completed earlier to coordinate with other site work being done.

"Laches is an equitable doctrine that bars relief when a complaining party is guilty of want of due diligence in failing to promptly institute an action to the prejudice of another." *Stilp v. Hafer*, 718 A.2d 290, 292 (Pa. 1998); *accord Sprague v. Casey*, 550 A.2d 184, 187 (Pa. 1988). The doctrine of laches bars "prosecution of stale claims and is the practical application of the maxim that those who sleep on their rights must awaken to the consequence that they have disappeared." *Fulton v. Fulton*, 106 A.3d 127, 131 (Pa. Super. 2014) (internal quotations and citations removed). Whether laches applies is a question of law. *Id*. However, applicability of the doctrine of laches is a factual determination made on a case-by-case basis. *Id*.

"For laches to apply, there must be a lack of due diligence in pursuing a cause of action and resulting prejudice to the other party." *Sedor v. West Mifflin Area School District*, 713 A.2d 1222, 1225 (Pa. Cmwlth. 1998); *accord Sprague*, 550 A.2d at 187; *White v. Township of Upper St. Clair*, 968 A.2d 806, 811 (Pa. Cmwlth. 2009), *appeal denied*, 995 A.2d 355 (Pa. 2010). "The test for due diligence is not what a party knows, but what he might have known by the use of

information within his reach." *White*, 968 A.2d at 811. "Prejudice may be found where there has been some change in the condition or relations of the parties which occurs during the period the complainant failed to act." *Stilp*, 718 A.2d 290, 294 (Pa. 1998).

In analyzing whether a delay occurred in this case, the trial court stated as follows:

> The relief requested is not barred by laches. The suggestion that [Wheels] had a duty to recognize the illegality of the bid process and should be barred from seeking relief because [it] did not notify the [] District of their [sic] violation of the law is without merit. The [] District was in a far superior position to act in compliance with the law and cannot complain[] that [Wheels] failed to act to prevent their violation of law. In addition, the evidence established that at the time this action was filed, no actual work had commenced on the exterior plumbing work and the only thing commenced was the purchase and delivery of materials. The [] District's failure to abide by the provisions of the Separations Act and the School Code means that it does not come to court with clean hands.

Trial Court Preliminary Injunction Order at 5-6, ¶10.

We disagree with the trial court that Wheels was under no duty to recognize its claims during the bid process. The District prepared and solicited separate bids for the plumbing, heating, ventilation, and electrical work, as well general construction. Reproduced Record (R.R.) at 1214a. The Project specifications were advertised and available to Wheels and all other prospective bidders on November 18, 2015. R.R. at 274a, 395a; 461a, 516a; 1214a, 1997a. The Project specifications clearly assigned all sanitary line, storm line, and waterline installations inside the building and *up to five feet outside of the building footprint* to the plumbing prime contractor. R.R. at 1216a. The specifications

11

assigned all "site utilities," which included site sanitary, site storm, and site waterline installations *more than five feet from the building*, to the general prime contractor. R.R. at 1215a. On December 18, 2015, there was a mandatory pre-bid conference.

Bidders were permitted to submit questions regarding the specifications until December 16, 2015. R.R. at 395a. Wheels asked whether the prime contractor, which it acknowledged was responsible for installing the exterior storm, sanitary, and water, should be responsible for all aspects from the main line utility connection to the five foot building perimeter, including related tap/utility fees. R.R. at 1289a. Wheels' question led to Addendum No. 4, which provides:

> It is the intent of the Site Civil drawings that all utility work beyond 5' outside of the building be completed by the General Contractor since significant trenching and backfilling will be required. If a registered plumber is required for any of the work (5' beyond the building), the Site Contractor will be responsible for providing a registered plumber.

R.R. at 67a; *see* R.R. at 417a.

Wheels prepared a bid for the plumbing work pursuant to the bid specifications. Wheels did not bid on the disputed work – the site sanitary, site storm or site waterline work more than five feet from the building – as this was included in the general construction specifications. The sealed bids were due by noon on January 12, 2016 and opened to the public immediately thereafter. R.R. at 394a-395a, 419a; 519a; 1997a. On January 27, 2016, the District awarded Wheels the plumbing contract and Nello the general construction contract. R.R. at 274a, 461a; 1997a. The Project kicked off in early March 2016. R.R. at 461a; 1997a.

Wheels, as a bidder for the plumbing contract, was well aware when it submitted its bid what work was part of the plumbing prime contract and what

12

work was in the general construction prime contract. The information was in its reach. Yet, Wheels did not raise a bid protest during the bid process. Rather, Wheels waited until June 1, 2016, to file this action, which was nearly seven months after notice of the bid specifications, five months after the bids were awarded, and four months after work on the Project commenced.

We have reviewed cases alleging violations of the Separations Act and we are aware of no case where the party waited seven months after the advertisement for bid to seek redress. Generally, the complainant filed an action within two months of the advertisement for bid. *See, e.g.*, *Mechanical Contractors Association of Eastern Pennsylvania, Inc. v. Department of Education*, 934 A.2d 1262, 1266 (Pa. 2007) (declaratory judgment action challenging the bid was filed two months after school district advertised the bid); *Philips Brothers Electrical Contractors, Inc. v. Valley Forge Sewer Authority*, 999 A.2d 652, 653-54 (Pa. Cmwlth. 2010) (prospective bidder filed complaint in equity within one week of the municipal authority's solicitation for bid); *Mechanical Contractors Association v. Senior Citizen Health Care Council*, 674 A.2d 752, 753 (Pa. Cmwlth. 1996) (suit filed one month after bid was advertised); *Housing Authority of Pittsburgh v. Metz*, 550 A.2d 599, 601 (Pa. Cmwlth. 1988), *appeal denied*, 575 A.2d 571 (Pa. 1990) (owners of plumbing business filed an equity action claiming violation of Separations Act less than one month after advertisement for bid); *see also Pennsylvania Associated Builders and Contractors, Inc. v. Commonwealth Department of General Services*, 932 A.2d 1271, 1276 (Pa. 2007) (contractors association filed an injunction action alleging a request for proposals process violated the law prior to any actual solicitations for bid); *American Totalisator Co., Inc. v. Seligman*, 414 A.2d 1037, 1039 (Pa. 1980)

13

(disappointed bidder suit filed one month after cost proposals were revealed and less than two weeks after contract was awarded to other bidder); *Pleasant Hills Construction Co., Inc. v. Public Auditorium Authority of Pittsburgh*, 782 A.2d 68, 76 (Pa. Cmwlth.), *rev'd on other grounds*, 784 A.2d 1277 (Pa. 2001) (a one-month delay in filing a complaint after notice that a higher bid was accepted was not excessive). Although application of the doctrine of laches does not depend upon the mere lapse of time, but rather whether the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice, *see Sprague*, these cases illustrate that vigilance and swift action is critical in the context of the competitive bidding process.

Here, Wheels knew the plumbing specifications did not include the disputed work when it placed its bid, yet it never made an examination or inquiry to discern whether such work should have been included in the plumbing contract until long after the contracts were awarded and work on the Project commenced. We conclude Wheels has not acted with due diligence in pursuing its claims.

Moreover, Wheels' delay in filing suit prejudiced the District and other contractors by critically delaying work on the entire Project after construction began. At the time of suit, not only were contracts awarded and materials purchased, but the Project construction was well underway. Although the parties disagree as to whether any actual work had begun on the disputed work before June 1, 2016, the record shows Nello billed the District for $164,851.20 for materials purchased and work completed on the storm sewer. R.R. at 1712a. Nello subcontracted with Macson to perform the disputed work. R.R. at 779a, 930a-931a.

14

Even if the disputed work had not begun, other phases of construction had begun according to schedule. All phases of work must be sequenced and coordinated with the overall construction to maintain progress. Wheels' suit disrupted the flow of construction, which will delay completion of the Project and cause financial harm to the District, Nello, innocent subcontractors, and the taxpaying public. The relative hardships are out of proportion because the cost to the enjoined parties of obeying the injunction is far greater than any damage incurred by Wheels by the continuation of the enjoined action. Moreover, at the time Wheels filed suit, it was impossible to return the parties to the status quo. *See Tilghman v. Commonwealth*, 366 A.2d 966, 968 (Pa. Cmwlth. 1976), *decree aff'd*, 374 A.2d 535 (Pa. 1977) (where it would be impossible to restore the status quo and innocent parties are greatly prejudiced by the delay, the plaintiff's claim is barred by laches). Such would not have occurred had Wheels filed its action sooner as a bid protest.

Under the facts and circumstances, we conclude Wheels did not act diligently in pursuing its claim, and its delay in initiating a legal action challenging the bid specifications and contract awards prejudiced Appellants. Thus, the trial court erred by failing to apply the doctrine of laches to preclude the equitable relief sought by Wheels.

15

## IV. Conclusion

Accordingly, we reverse the trial court's preliminary injunction order.[10]

_____

MICHAEL H. WOJCIK, Judge

---

[10] In light of this disposition, we need not address the remaining issues.

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Wheels Mechanical Contracting and Supplier, Inc. | : | |
| | : | |
| | : | |
| v. | : | No. 1803 C.D. 2016 |
| | : | |
| The West Jefferson Hills School District and Nello Construction and Laborers' District Council of Western Pennsylvania, and Plumbers Local Union No. 27 | : | |
| | : | |
| Appeal of: West Jefferson Hills School District | : | |
| | : | |
| Wheels Mechanical Contracting and Supplier, Inc. and Plumbers Local Union No. 27 | : | |
| | : | |
| v. | : | No. 1827 C.D. 2016 |
| | : | |
| The West Jefferson School District Nello Construction, and Laborers' District Council of Western Pennsylvania | : | |
| | : | |
| Appeal of:  Laborers' District Council of Western Pennsylvania | : | |
| | : | |
| Wheels Mechanical Contracting and Supplier, Inc. | : | |
| | : | |
| v. | : | No. 1828 C.D. 2016 |
| | : | |
| The West Jefferson Hills School District and Nello Construction | : | |
| | : | |
| v. | : | |

Laborers' District Council of Western     :
Pennsylvania, and Plumbers Local       :
Union No. 27                                         :
                                                    :
Appeal of:  Nello Construction      :

## O R D E R

AND NOW, this 28<u>th</u> day of <u>February</u>, 2017, the order of the Court of Common Pleas of Allegheny County, dated October 26, 2016, is REVERSED, and this matter is REMANDED to the trial court for proceedings consistent with the foregoing opinion.

_____
MICHAEL H. WOJCIK, Judge

18