IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chester Community Charter School, : 
             Petitioner : 
  : 
     v. : No. 351 M.D. 2023
  : 
Commonwealth of Pennsylvania, : 
Department of Education; Dr. Khalid N. : 
Mumin, Secretary of the Pennsylvania : 
Department of Education (in his official : 
capacity); Chester Upland School : 
District; and Nafis J. Nichols, Receiver : 
for the Chester Upland School District : 
(in his official capacity), : 
             Respondents :   Argued: June 4, 2024

BEFORE:   HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge (P.)
            HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                   FILED: July 3, 2024

      Before this Court are Preliminary Objections (POs) filed by the Chester Upland School District (District) and Nafis J. Nichols, the District's receiver (Receiver), in response to a Petition for Review (PFR) filed by the Chester Community Charter School (CCCS). CCCS' PFR seeks declaratory, injunctive, and mandamus relief against the District, Receiver, the Pennsylvania Department of Education (Department), and the Department's Secretary, Dr. Khalid N. Mumin (Secretary) (collectively, Respondents). Also before this Court is an Application for Relief in the Nature of a Motion for Judgment on the Pleadings (Application for Relief) filed by the Department and the Secretary (collectively, the Commonwealth). The issue before this Court is whether a 2015 settlement agreement (Agreement)

executed by Respondents and CCCS is valid and enforceable where the Agreement reduces the tuition rates CCCS would ordinarily receive for special education students pursuant to Section 1725-A of the Charter School Law.[1]

After review, we overrule the District's POs, grant the Commonwealth's Application for Relief, and dismiss CCCS' PFR as to the Commonwealth. Under Section 761(a) of the Judicial Code, 42 Pa.C.S. § 761(a), this Court's original jurisdiction encompasses civil actions by or against the Commonwealth government, including any officer thereof, when acting in his or her official capacity. Instantly, only the Secretary and the Department are Commonwealth parties for purposes of Section 761(a) of the Judicial Code. This Court's original jurisdiction may only be invoked for claims against the District, a local agency,[2] and Receiver[3] when those claims are ancillary to a matter within our exclusive original jurisdiction.[4] In the absence of a Commonwealth party, we do not have jurisdiction over CCCS' claims

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, added by the Act of June 19, 1997, P.L. 225, 24 P.S. § 17-1725-A. Section 1725-A of the Charter School Law establishes the formula for calculating the tuition rates paid by school districts to charter schools.

[2] *See Borough of Hummelstown v. Lower Dauphin Sch. Dist.*, 357 A.2d 727, 29 (Pa. Cmwlth. 1976) (school district is not an agency of the Commonwealth but a local agency, which is not subject to the original jurisdiction of this Court).

[3] Receiver is not an officer of the Commonwealth, the term of which is defined as an individual to whom "some sovereign functions of government" have been delegated. *Rank v. Balshy*, 475 A.2d 182, 184 (Pa. Cmwlth. 1984).

[4] *See* Section 761(c) of the Judicial Code, 42 Pa.C.S. § 761(c), which provides that this Court "shall have ancillary jurisdiction over any claim or other matter [that] is related to a claim or other matter within [our] exclusive original jurisdiction."

against the District and Receiver. Therefore, we transfer this matter to the Court of Common Pleas of Delaware County (trial court) for disposition.[5]

## I. Background

In 1994, the Department declared the District to be financially distressed under Section 691 of the Public School Code of 1949 (School Code).[6] On August 14, 2012, the Department declared the District was in financial recovery status, as described in Section 621-A of the School Code.[7] As a result, the Secretary appointed a chief recovery officer to develop and implement a financial recovery plan for the District. When the District's Board of School Directors (Board) failed to approve the financial recovery plan created by the chief recovery officer, the trial court appointed a receiver to implement the District's financial recovery plan.

In October 2015, the District, the Commonwealth, CCCS, and two other District charter schools entered into a memorandum of understanding (MOU),[8] by which the charter schools agreed to receive reduced special education tuition rates for the 2015-16 through 2024-25 school years. In addition, the charter schools agreed to waive any tuition payments due for the 2014-15 school year. The terms of the MOU were incorporated into an amended financial recovery plan (Amended Plan) filed with the trial court on October 2, 2015. While the MOU only applied to

[5] *See* Section 5103(a) of the Judicial Code, 42 Pa.C.S. § 5103(a), which provides that a matter brought in a court that does not have jurisdiction shall not be dismissed but instead shall be transferred to the proper tribunal.

[6] Act of March 10, 1949, P.L. 30, *as amended*, added by the Act of Dec. 15, 1959, P.L. 1842, *as amended*, 24 P.S. § 6-691.

[7] Added by the Act of July 12, 2012, P.L. 1142, 24 P.S. § 6-621-A.

[8] Widener Partnership Charter School and Chester Charter School for the Arts are also parties to the MOU and the Agreement. They have not challenged the Agreement's validity.

3

the District's three brick-and-mortar charter schools, the Amended Plan extended the reduced special education tuition rates to the District's cyber charter schools. The trial court approved the Amended Plan in an order and opinion issued on October 9, 2015. The trial court's opinion reflected that the Agreement would shift $20,000,000 from the charter schools that were parties to the Agreement to the District.

The Commonwealth, the District, and CCCS subsequently executed the Agreement, which included the modified special education tuition rates set forth in the MOU. The agreed-upon tuition rates would remain in effect through the 2024-25 school year, even if the District exited receivership or financial recovery status. The parties "explicitly recognize[d]" that tuition rates would not be affected by subsequently enacted legislation. PFR, Ex. A at 4. The parties also agreed that they could not set aside the Agreement on the grounds of mistake of fact or law, or subsequent changes in the law.

The District's cyber charter schools appealed the trial court's October 9, 2015 order to this Court, arguing that no statutory authority existed for modifying their statutorily-mandated special education tuition rates. See *In re Appointment of a Receiver for Chester Upland School District* (Pa. Cmwlth., No. 2095 C.D. 2015, No. 2096 C.D. 2015, No. 2097 C.D. 2015, No. 2098 C.D. 2015, No. 2181 C.D. 2015, No. 2182 C.D. 2015, No. 2183 C.D. 2015, No. 2184 C.D. 2015, No. 2185 C.D. 2015, No. 2186 C.D. 2015, No. 2228 C.D. 2015, and No. 2229 C.D. 2015, filed Sept. 13, 2018). Notably, CCCS did not appeal the October 9, 2015 order approving the Amended Plan.

A three-judge panel of this Court ruled in favor of the cyber charter schools, holding that a receiver could only modify a school district's legal or contractual

4

obligations when otherwise exercising the powers granted to receivers in the School Code. We further held that the term "legal obligation" did not include the District's "statutorily mandated" payments to charter schools. *In re Appointment of a Receiver*, slip. op. at 8. Although a financially distressed school district may renegotiate a contract to "effect needed economies in the operation of the district's schools[,]"[9] the relevant provisions of the School Code did not permit a receiver to "**unilaterally** modify" the tuition rates set forth in the Charter School Law. *Id.* at 9 (emphasis in original). Therefore, we concluded that the trial court erred in approving a modification to the special education tuition rates paid to the District's cyber charter schools. We noted that the General Assembly crafted other means by which a financially-distressed school district could obtain assistance, such as entering into a "voluntary agreement"[10] with a charter school for assistance in repaying a loan provided by the Department. *Id.* at 10 n.25. Use of the term "voluntary" signified the General Assembly's intent that a cyber charter school could not be compelled to assist a school district in financial recovery, and a receiver could not "disregard the detailed funding formula mandated by Section 1725-A(a) of the Charter School Law." *Id.*

CCCS interpreted *In re Appointment of a Receiver* as prohibiting any modification, voluntary or otherwise, of the special education tuition rates provided

---

[9] *See* Section 642-A(a)(3) of the School Code, added by the Act of July 12, 2012, 24 P.S. § 6-642-A(a)(3).

[10] Section 681-A of the School Code, added by the Act of July 12, 2012, P.L. 1142, 24 P.S. § 6-681-A, authorizes the Department to provide loans to school districts in financial recovery status. Section 642-A(a)(18) of the School Code, 24 P.S. § 6-642-A(a)(18), permits the receiver of a financially distressed school to enter into a "voluntary agreement" with the district's charter schools, by which the charter schools may assist the school district with repaying any loan provided by the Department under Section 681-A of the School Code.

for in Section 1725-A(a) of the Charter School Law.  Therefore, CCCS invoiced the District for the tuition rates in effect prior to execution of the Agreement.

On February 25, 2021, the District initiated an action in the trial court that sought reimbursement of $6,914,253.80 in funds that the District alleged were improperly billed and collected by CCCS and/or withheld from the District's state subsidy by the Department (Reimbursement Action).  The District contended that this Court's holding in *In re Appointment of a Receiver* did not undermine the Agreement's validity, as it was a voluntary agreement negotiated by the parties, including CCCS.  By way of relief, the District requested that the trial court issue an order directing that CCCS and the Department honor the negotiated tuition rates in the Agreement and refund to the District any amounts charged or withheld in excess of those rates.  The Reimbursement Action is currently pending with the trial court.

On August 8, 2023, CCCS filed its PFR with this Court, requesting a declaration that the Agreement was void and unenforceable and an injunction prohibiting its enforcement.[11]  CCCS also requested a writ of mandamus directing that the District pay CCCS the tuition rates provided for in Section 1725-A of the Charter School Law and compelling the Department to withhold from the District's

---

[11] Section 7532 of the Declaratory Judgments Act, 42 Pa.C.S. § 7532, grants courts of record the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

To obtain permanent injunctive relief, a party must establish that its right to relief is clear, that the injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result if the court does not grant the injunction. *Mazin v. Bureau of Pro. and Occupational Affairs*, 950 A.2d 382, 389 (Pa. Cmwlth. 2008).

state subsidy any amount owed to CCCS.[12]  Finally, CCCS requested an award of damages, as well as attorney's fees and costs.

The District filed POs, asserting that the PFR should be dismissed because the Reimbursement Action pending in the trial court involved the same parties, the same issue – specifically, whether the Agreement is enforceable – and requested the same relief.

In its Answer to the PFR, the Commonwealth denied the legal conclusions therein and asserted the affirmative defenses of *res judicata*/collateral estoppel, equitable estoppel, laches, waiver, and sovereign immunity.  The Commonwealth included a counterclaim in its answer, which sought a declaratory judgment that CCCS is bound by the terms of the Agreement.

The Commonwealth subsequently filed its Application for Relief, which largely reiterates the affirmative defenses raised in its Answer.  More specifically, the Commonwealth avers that CCCS' PFR is barred by *res judicata* or collateral estoppel because the Agreement was previously litigated and approved by the trial court, that the doctrine of laches bars CCCS' PFR, where CCCS waited eight years to challenge the Agreement's validity, that the doctrines of equitable estoppel and waiver bar CCCS' claims because CCCS explicitly waived its right to challenge the Agreement based on subsequent changes in the law, and that CCCS is not entitled to mandamus relief because the Agreement discharges the Commonwealth of its

---

[12] Section 1725-A(a)(5) of the Charter School Law requires that a school district pay tuition to charter schools in 12 monthly payments.  If a school district fails to make the required payments, the Secretary "shall deduct the estimated amount" from any state payments owed to the district. 24 P.S. § 17-1725-A(a)(5).

7

duty to pay the statutory tuition rates under Section 1725-A of the Charter School Law.

## II. Issues

The issues before the Court are whether the Agreement is void and unenforceable and whether CCCS' claims are barred by the doctrines of lis pendens, *res judicata* or collateral estoppel, laches, equitable estoppel, and waiver.

## III. Discussion
### A. The District's POs

In ruling on POs, we must accept as true all well-pleaded material facts in the petition for review and all inferences reasonably deducible therefrom. *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010). We are not required to accept as true any conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Id.* Preliminary objections testing the legal sufficiency of a pleading will be sustained only where the pleading clearly fails to state a claim for which relief may be granted. *Id.*

In its POs, the District argues that the doctrine of lis pendens requires that the PFR be dismissed, given the Reimbursement Action pending in the trial court. The District maintains that because this matter and the Reimbursement Action concern the same parties and issue, and seek the same relief, the PFR must be dismissed. Alternatively, the District requests that this matter be stayed pending the trial court's resolution of the Reimbursement Action.

Rule 1028(a)(6) of the Pennsylvania Rules of Civil Procedure permits a party to raise a preliminary objection based on the "pendency of a prior action." Pa.R.Civ.P. 1028(a)(6). The pendency of a prior action, or lis pendens, applies when

8

a previously filed case concerns the same parties, rights, and requested relief. *Swift v. Radnor Twp.*, 983 A.2d 227, 234 (Pa. Cmwlth. 2009). The doctrine of lis pendens is designed to protect a defendant from having to defend several suits on the same cause of action at the same time. *Hillgartner v. Port Auth. of Allegheny Cnty.*, 936 A.2d 131, 137 (Pa. Cmwlth. 2007).

While we agree that the parties in the instant matter are also parties to the Reimbursement Action, which similarly seeks to resolve the issue of whether the Agreement is valid and enforceable, the relief requested for each matter is not the same. The Reimbursement Action seeks repayment of $6,914,253.80 in funds that the District alleges were overbilled by CCCS or improperly withheld from the District's subsidy by the Commonwealth. CCCS' PFR, by contrast, is a suit in equity that seeks declaratory, injunctive, and mandamus relief. Because the requirements for lis pendens are not met, we must overrule the District's POs.

### B. Commonwealth's Application for Relief

A motion for judgment on the pleadings is in the nature of a demurrer, for which all of the nonmovant's well-pleaded allegations are viewed as true. *School Express, Inc. v. Upper Adams Sch. Dist.*, 303 A.3d 186, 194 (Pa. Cmwlth. 2023) (internal citations omitted). Only those facts specifically admitted by the nonmovant may be considered against him. *Id.* A judgment on the pleadings should not be entered where there are unknown or disputed issues of fact, and we must confine our consideration to the pleadings and relevant documents. Additionally, this Court must accept as true "all well[-]pled statements of fact, admissions and any documents properly attached to the pleadings presented by the party against whom the motion is filed." *N. Sewickley Twp. v. LaValle*, 786 A.2d 325, 327 (Pa. Cmwlth. 2001). We will grant a motion for judgment on the pleadings only where the moving

9

party's right to succeed is certain and the case is so free from doubt that a trial would be a fruitless exercise. *Id.*

The Commonwealth's Application for Relief cites several bases for dismissing the PFR. First, the Commonwealth argues that the doctrines of *res judicata* and collateral estoppel prevent CCCS from relitigating the tuition rates paid under the Agreement. Next, the Commonwealth argues that the doctrine of laches precludes CCCS from voiding the Agreement more than eight years after its execution.[13] Third, the Commonwealth argues that CCCS has waived its right to challenge the Agreement and, thus, CCCS should be equitably estopped from so doing. Finally, the Commonwealth argues that CCCS cannot state a claim for mandamus where the Agreement was validly executed, and the Agreement's terms provide for the payment of reduced tuition rates. In the absence of a valid mandamus claim, the Commonwealth argues that no basis exists for granting CCCS declaratory and injunctive relief and awarding damages.

### 1. *Res Judicata*/Collateral Estoppel

Both *res judicata* and collateral estoppel serve to preclude a party from pursuing litigation that revisits a claim or an issue that has been settled by a previous action, thus preserving the interest in finality of judicial determinations, preventing endless litigation, and precluding parties from obtaining the proverbial "second bite of the apple." *In re Est. of Plance*, 175 A.3d 249, 270 (Pa. 2017). *Res judicata* bars an action when it shares with a prior action a common identity of issues, identity in the cause of action, identity of persons and parties to the action, and identity of the capacity of the parties suing or being sued. Collateral estoppel bars the relitigation of issues necessarily determined between the parties in a prior proceeding that

---

[13] We have reordered the Commonwealth's arguments.

10

resulted in the entry of a final judgment. *Com. v. Holder*, 805 A.2d 499, 502 (Pa. 2002). Pennsylvania courts have applied the collateral estoppel doctrine only where the issues in the two actions are sufficiently similar and material to justify invoking the doctrine, where the issue was actually litigated, and a final judgment was issued in the first action. An issue has been actually litigated when it was properly raised, submitted for determination, and actually determined.

The Commonwealth argues that CCCS cannot challenge the lawfulness of the reduced tuition rates incorporated into the Amended Plan approved by the trial court on October 9, 2015. The Commonwealth contends that execution of the Agreement after the trial court entered its order adopting the Amended Plan is irrelevant, as the Agreement was based on the MOU that included the same reduced tuition rates. Ultimately, CCCS agreed to accept reduced tuition payments, which the trial court approved and which CCCS did not appeal.

CCCS denies that the issues resolved by the Agreement were actually litigated or the subject of any judgment. Rather, CCCS argues that the Agreement is governed by contract principles. In addition, CCCS argues that the doctrines of *res judicata* or collateral estoppel requires the entry of a final judgment, which cannot be satisfied by a "private agreement . . . even when that agreement is embodied in a consent judgment or decree." CCCS' Br. at 9.

We agree with CCCS that the Agreement was not incorporated into the trial court's October 9, 2015 order. While that order did incorporate the terms of the MOU, including the reduced tuition rates set forth in the Agreement, that order is not at issue here. This Court is reviewing whether the *Agreement* is valid and enforceable. Because it does not appear that the Agreement was ever reduced to a final judgment, *res judicata* and collateral estoppel do not apply.

11

## 2. Laches

Laches is an equitable doctrine that bars relief when a complaining party is guilty of want of due diligence in failing to promptly institute an action to the prejudice of another. *Wheels Mech. Contracting & Supplier, Inc. v. W. Jefferson Hills Sch. Dist.*, 156 A.3d 356, 362 (Pa. Cmwlth. 2017). The doctrine of laches bars the prosecution of stale claims under the maxim that "those who sleep on their rights must awaken to the consequence that they have disappeared." *Id.* (internal citations omitted). Application of the doctrine of laches is a factual determination that is made on a case-by-case basis. For laches to apply, a party must exhibit a lack of due diligence in pursuing its cause of action, which results in prejudice to the other party. The test for due diligence is not what a party knows, but what it might have known by the use of information within its reach. Prejudice may be found where a change in the relations of the parties has occurred during the period in which the complainant failed to act.

The Commonwealth asserts that CCCS failed to exercise due diligence in challenging the Agreement's validity, despite having "all the information" necessary to do so when the Agreement was executed in 2015. Commonwealth's Br. at 22. Instead, CCCS only raised its concerns with the Agreement in 2018, following this Court's decision in *In re Appointment of a Receiver*. The Commonwealth asserts that prejudice to the District would clearly result if it was required to pay the statutory tuition rates that have accrued since the Agreement's execution in 2015.

While CCCS maintains that the Agreement was void *ab initio*, it denies that it seeks relief dating back to 2015. CCCS instead asserts that it seeks judgment based on the Commonwealth's alleged refusal to withhold the District's state subsidy following this Court's decision in *In re Appointment of a Receiver.*

12

Furthermore, CCCS denies that the Commonwealth will suffer any prejudice if required to fulfill its statutory duties under Section 1725-A(a)(5), and it cannot assert the doctrine of laches on the District's behalf.

We are not persuaded by the Commonwealth's argument. To prevail on the defense of laches, the Commonwealth must establish a delay arising from CCCS' failure to exercise due diligence and prejudice to the Commonwealth resulting from the delay. *Stilp v. Hafer*, 701 A.2d 1387, 1391 (Pa. Cmwlth. 1997). Clearly, CCCS failed to exercise due diligence in pursuing the instant claims. In light of the "millions of dollars" CCCS alleges it is owed, it seems equally clear that the District would be prejudiced should this Court declare the Agreement void. PFR ¶ 57. Problematically, it is not clear what prejudice the Commonwealth, as the moving party, would suffer. Thus, we are constrained to agree with CCCS that the doctrine of laches is inapplicable.

### 3. Equitable Estoppel/Waiver

Equitable estoppel applies when a party, through words, conduct, or silence, induces another party to act in reasonable reliance thereon. *Dep't of Revenue v. King Crown Corp.*, 415 A.2d 927, 929 (Pa. Cmwlth. 1980). The two essential elements of equitable estoppel are inducement and justifiable reliance on that inducement. *In re Twp. of Jackson*, 280 A.3d 1074, 1083 (Pa. Cmwlth. 2022). The inducement may be through words or conduct and the induced acts may be by commission or forbearance, provided that a change in condition causes a disadvantage to the induced party. *Id.* (internal citations omitted). The representation or conduct itself must be sufficient to warrant the action of the party claiming estoppel.

The enforceability of a settlement agreement is governed by principles of contract law. *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999) (internal citations omitted). Parties to a contract can expressly or impliedly waive its provisions. *Black Top Paving Co., Inc. v. Dep't of Transp.*, 466 A.2d 774, 776 (Pa. Cmwlth. 1983). Waiver is the intentional and voluntary relinquishment of a known right. *Com. v. Lucarelli*, 971 A.2d 1173, 1179 (Pa. 2009). Waiver of a known contractual right may be established by a party's express declaration. *Moscatiello Constr. Co. v. Pittsburgh Water and Sewer Auth.*, 648 A.2d 1249, 1251 (Pa. Cmwlth. 1994).

The Commonwealth argues that CCCS' PFR is barred by the doctrines of waiver and equitable estoppel because CCCS expressly agreed to accept the reduced tuition rates set forth in the Agreement and agreed to waive its right to challenge the Agreement, regardless of subsequent changes in the law. Because the Commonwealth relied on the representations made by CCCS when executing the Agreement, it maintains that CCCS has waived any right to bring the instant action.

CCCS maintains that the Agreement was a legal nullity from the beginning, based on its analysis of *In re Appointment of a Receiver.* Thus, any waiver on CCCS' part has no operative effect, and CCCS is entitled to collect the statutory tuition rates. Regarding equitable estoppel, CCCS argues that the Commonwealth cannot invoke the doctrine as a means of avoiding the mandate in Section 1725-A(a)(5) of the Charter School Law that the Department deduct payments owed to CCCS from the District's state subsidy. CCCS contends that the Commonwealth cannot reasonably rely on the Agreement to avoid fulfilling its statutory duties. CCCS also suggests that the Department cannot establish any detriment, prejudice, or harm that will result from complying with Section 1725-A(a)(5) of the Charter School Law.

At the outset, we must object to CCCS' interpretation of *In re Appointment of a Receiver*, and the controlling nature of that decision to the instant matter. *In re Appointment of a Receiver* concerned whether a trial court could *unilaterally* reduce a charter school's tuition rates. This Court held that it could not, as the trial court's order permitted the receiver to disregard the statutory funding formula in the Charter School Law, creating, in essence, a mandate that the District's cyber charter schools financially assist the District. Notably, CCCS did not appeal the trial court's October 9, 2015 order, and the issue of whether a charter school could *voluntarily* enter into an agreement with a financially-distressed school district to reduce the charter school's statutory funding was not before this Court. Even if *In re Appointment of a Receiver* guided our decision here, CCCS explicitly agreed to waive any right it otherwise had to challenge the Agreement, *regardless of subsequent legal developments*.

The Commonwealth presents a compelling argument that CCCS' PFR is barred by the doctrines of equitable estoppel and waiver. The parties negotiated the Agreement, by which CCCS agreed to accept reduced tuition payments from the District and agreed to waive any rights it would otherwise have to challenge the Agreement's validity, including any challenge based on changes in the law. In reliance on CCCS' representations and the executed Agreement, the District paid CCCS reduced tuition from 2015 to the present. The Department, in turn, did not withhold sums from the District's state subsidy, as it otherwise would have been required to by Section 1725-A(a)(5) of the Charter School Law. CCCS abided by the terms of the Agreement for years.

Moreover, this Court decided *In re Appointment of a Receiver* on September 13, 2018. CCCS waited until May 27, 2020, an additional 18 months before it sent

15

the District an invoice for the statutory tuition rates. Thus, nearly five years passed before CCCS notified the District that it intended to collect the rates provided in Section 1725-A of the Charter School Law. By accepting reduced tuition for several years, CCCS induced the District to continue paying the reduced rates provided in the Agreement. Consequently, the Department did not withhold funds from the District's subsidy and pay those amounts to CCCS. That the District and the Department relied on CCCS' conduct to their detriment seems indisputable, given that CCCS' May 27, 2020 invoice reflects a balance due from the District in the amount of $8,913,383.63. Based on these facts, we are compelled to conclude that CCCS's claims, and its challenge to the Agreement's validity, are barred by the doctrine of equitable estoppel.

Even if CCCS was not equitably estopped from challenging the Agreement, CCCS expressly waived its right to "re-open or set [the] Agreement aside in the future on the grounds that it becomes aware of any mistake of fact or any mistake of law (including any such mistake arising out of a subsequent change of law) relating to this Agreement." PFR, Ex. A, at 5. CCCS' argument against waiver rests entirely on its misreading of *In re Appointment of a Receiver*, an argument we have already rejected.

### 4. Mandamus

Finally, the Commonwealth argues that, based on the above arguments and CCCS' execution of the Agreement in 2015, the Commonwealth and the District cannot be compelled to pay the statutory tuition rates under Section 1725-A of the Charter School Law. Therefore, CCCS cannot demonstrate it has a right to mandamus relief.

16

CCCS essentially reiterates its argument that the Agreement is void and, as a result, the District is required to pay the statutory tuition rates. If the District fails to do so, the Commonwealth has a mandatory, non-discretionary duty to withhold the District's subsidies and pay those amounts to CCCS. In its PFR, CCCS suggests that the authority of a charter school and a school district to enter into a voluntary agreement is limited to loan repayment assistance under Section 681-A(f) of the School Code. Otherwise, CCCS contends that a charter school and a school district may not legally enter into *any* voluntary agreement.

A writ of mandamus is an extraordinary remedy that is used to compel the performance of a ministerial act or mandatory duty. *DeGeorge v. Young*, 892 A.2d 48, 51 (Pa. Cmwlth. 2006). Mandamus may only be granted where the moving party establishes a clear legal right, a corresponding duty on the part of the respondents, and the lack of any other appropriate and adequate remedy. *Id.*

CCCS is correct that Section 1725-A(a)(5) of the Charter School Law requires that a school district pay tuition to charter schools in 12 monthly payments. In the event a school district fails to make the required tuition payments, the Secretary "shall deduct the estimated amount" from any state payments owed to the district. 24 P.S. § 17-1725-A(a)(5). In voluntarily entering into the Agreement, CCCS agreed to forgo the statutory tuition rates to which it would have been entitled. To be enforceable, a settlement agreement must possess all the elements of a valid contract, and the parties must agree upon all the terms and the subject matter thereof. *Mazzella v. Koken*, 739 A.2d at 536.

CCCS has not suggested that the Agreement does not represent the negotiated agreement of the parties, or that it somehow lacks the hallmarks of a valid contract. CCCS has cited no language in the Charter School Law that prohibits CCCS from

17

negotiating an agreement whereby the District would pay CCCS reduced tuition rates. Instead, CCCS appears to rely entirely on *In re Appointment of a Receiver*. As previously discussed, *In re Appointment of a Receiver* does not control our disposition here, where CCCS voluntarily entered into the Agreement with the District and the Commonwealth, and expressly waived its right to thereafter challenge the Agreement's validity.

Moreover, we reject CCCS' contention that the Charter School Law prohibits voluntary agreements between a charter school and a school district, unless the agreement concerns loan repayment assistance under Section 681-A(f). Indeed, Section 672-A(b)(1) of the School Code, 24 P.S. § 6-672-A(b)(1),[14] explicitly grants a receiver the authority to implement the school district's financial recovery plan. The Amended Plan approved by the trial court on October 9, 2015, includes the reduced tuition rates CCCS now disputes. Arguably, execution of the Agreement is a necessary step in implementing the Amended Plan.

Under these circumstances, CCCS cannot demonstrate the existence of a mandatory or ministerial duty, and its request for mandamus relief must fail. Because we hold that the Agreement is valid and enforceable, CCCS' claims for injunctive and declaratory relief must likewise fail.

## IV. Conclusion

Based on the foregoing discussion, because the requirements of lis pendens are not met, we overrule the District's POs. We grant the Commonwealth's Application for Relief on the basis that CCCS' PFR is barred by the doctrines of equitable estoppel and waiver. Accordingly, we dismiss CCCS' PFR as to the

---

[14] Added by the Act of July 12, 2012, P.L. 1142.

18

Commonwealth. In light of our holding that the Agreement is valid and enforceable, the Commonwealth's counterclaim seeking declaratory relief is rendered moot. Because the District is not an agency of the Commonwealth, and Receiver is not an officer of the Commonwealth, this Court does not have original jurisdiction over the claims raised by CCCS against those parties. Therefore, we transfer this matter to the trial court for disposition.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chester Community Charter School, :
             Petitioner :
              :
    v. : No. 351 M.D. 2023
              :
Commonwealth of Pennsylvania, :
Department of Education; Dr. Khalid N. :
Mumin, Secretary of the Pennsylvania :
Department of Education (in his official :
capacity); Chester Upland School :
District; and Nafis J. Nichols, Receiver :
for the Chester Upland School District :
(in his official capacity), :
             Respondents :

# **O R D E R**

AND NOW, this 3rd day of July, 2024, the Preliminary Objections filed by the Chester Upland School District (District) and Nafis J. Nichols, Receiver for the Chester Upland School District (Receiver), are hereby OVERRULED. The Application for Relief in the Nature of a Motion for Judgment on the Pleadings filed by the Commonwealth of Pennsylvania Department of Education (Department) and Dr. Khalid N. Mumin, Secretary of the Department, (collectively, the Commonwealth) is hereby GRANTED. The Petition for Review filed by the Chester Community Charter School (CCCS) is hereby DISMISSED as to the Commonwealth. Because this Court does not have original jurisdiction over claims filed by CCCS against the District and Receiver, we transfer this matter to the Court of Common Pleas of Delaware County for disposition.

 

_____
ELLEN CEISLER, Judge